No. 14-5069, 14-5099

# United States Court of Appeals
# for the Federal Circuit

RESOURCE INVESTMENTS, INC., LAND RECOVERY, INC.,

*Plaintiffs-Appellants,*

— v. —

UNITED STATES,

*Defendant-Cross Appellant.*

_____

ON APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS
CASE NO. 98-419, THE HONORABLE LAWRENCE BLOCK

_____

**OPENING BRIEF AND ADDENDUM OF APPELLANTS**

_____

| | |
|---|---|
| Marc R. Shapiro | Mark S. Parris |
| Orrick, Herrington & Sutcliffe LLP | Daniel D. Syrdal |
| 51 West 52nd Street | David Keenan |
| New York, New York 10019 | Orrick, Herrington & Sutcliffe LLP |
| (212) 506-5000 | 701 Fifth Avenue, Suite 5600 |
| mrshapiro@orrick.com | Seattle, Washington 98104 |
| | (206) 839-4300 |
| | mparris@orrick.com |

*Attorneys for Resource Investments Inc. and Land Recovery, Inc.*

# CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants certifies the following:

1.    We represent Resource Investments, Inc. and Land Recovery, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented: The captioned parties are the real parties in interest.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented: None.

4.    The following law firms and partners or associates appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

ORRICK, HERRINGTON & SUTCLIFFE LLP:

Mark S. Parris
Daniel D. Syrdal
David Keenan
Marc R. Shapiro

HELLER EHRMAN WHITE & MCAULIFFE (dissolved)
Steve S. Anderson

i

## CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants certifies the following:

1. We represent Resource Investments, Inc. and Land Recovery, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented: The captioned parties are the real parties in interest.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented: None.

4. The following law firms and partners or associates appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

ORRICK, HERRINGTON & SUTCLIFFE LLP:

Mark S. Parris
Daniel D. Syrdal
David Keenan
Marc R. Shapiro

HELLER EHRMAN WHITE & MCAULIFFE (dissolved)
Steve S. Anderson

Date: August 15, 2014          */s/ Mark S. Parris*
_____
                               Mark S. Parris
                               Orrick, Herrington & Sutcliffe LLP
                               701 5th Avenue, Suite 5600
                               Seattle, Washington 98104
                               Telephone: (206) 839-4300
                               Facsimile: (206) 839-4301
                               mparris@orrick.com

                               *Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ..................................................................... vi

STATEMENT OF RELATED CASES ...................................................... x

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT .......................................................... 4

STATEMENT OF THE ISSUES ............................................................. 5

STATEMENT OF THE CASE .................................................................. 6

    The Permitting Process .................................................................. 6

    District Court Litigation: *Resource I* ............................................ 7

    The Court of Federal Claims Litigation: *Resource II* ................. 10

    Impact of Tohono .......................................................................... 14

SUMMARY OF THE ARGUMENT ....................................................... 17

STANDARD OF REVIEW ...................................................................... 23

ARGUMENT ........................................................................................... 23

I.    PLAINTIFFS' CLAIMS BEFORE THE COURT OF
      FEDERAL CLAIMS ARE NOT "BASED ON
      SUBSTANTIALLY THE SAME OPERATIVE FACTS" AS
      THOSE IN *RESOURCE I* ............................................................ 23

    A.    Section 1500 is Not Implicated Because The Denial of
         a Permit Was Not an Operative Fact in *Resource II* ........... 28

        1.    Lucas/Penn Central Claims ...................................... 30

        2.    Extraordinary Delay Claim ....................................... 31

    B.    Section 1500 is Not Implicated Because The Denial of
         a Permit Was Not an Operative Fact in *Resource I* ............ 32

1.   Count III: Violations of NEPA And The Corps'
     Own Regulations ........................................................ 33

2.   Count IV: Improper Considerations/Procedures
     in Making Permit Decision ......................................... 35

C.   Even if The Denial of The Permit Constitutes an
     Operative Fact Common to Claims in *Resource I & II*,
     The Court of Federal Claims Still Had Jurisdiction
     Because The Presence of This One Fact Alone Does Not
     Satisfy The "Substantially The Same" Standard ................ 38

     1.   Under *Tohono*, The Claims Presented in The Two
          Suits Must Be Based on Substantially Similar
          Facts .......................................................................... 38

          a.   Operative Facts Are Those That May Prove, Not
               Disprove, Plaintiffs' Claims ................................ 38

          b.   The Presence of a Single Operative Fact Does Not
               Satisfy *Tohono's* "Substantial Similarity"
               Requirement ........................................................ 41

     2.   The Operative Facts Underlying Plaintiffs'
          *Resource II* Claims Are Not Substantially Similar
          to Their *Resource I* Claims ......................................... 45

II.  SECTION 1500 HAS NO APPLICATION BECAUSE THE
     ACTION IN *RESOURCE I* WAS NOT PENDING WHEN
     PLAINTIFFS FILED THEIR OPERATIVE COMPLAINT IN
     THE COURT OF FEDERAL CLAIMS ......................................... 54

CONCLUSION ....................................................................................... 57

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE UNDER FEDERAL RULES
OF APPELLATE PROCEDURE 32(a)(7) AND FEDERAL
CIRCUIT RULE 32

**ADDENDUM**

Opinion,
Dated February 5, 2014 (DKT 239) ................................................. A24–39

Judgment,
Dated February 6, 2014 (DKT 240) ..................................................... A40

Opinion,
Dated April 3, 2014 (DKT 245) ..................................................... A42–46

# TABLE OF AUTHORITIES

**Page**

CASES

*Aloisi v. United States,*
   85 Fed. Cl. 84 (2008) .......................................................... 31

*Appolo Fuels, Inc. v. United States,*
   381 F.3d 1338 (Fed. Cir. 2004) ........................................... 31

*Bass Enters. Prod. Co. v. United States,*
   381 F.3d 1360 (Fed. Cir. 2004) ........................................... 31

*Brandt v. United States,*
   710 F.3d 1369 (Fed. Cir. 2013) ........................................... 29

*Central Pines Land Co. v. United States,*
   697 F.3d 1360 (Fed. Cir. 2012) ................................... 22, 27, 28, 33, 56

*Christianson v. Colt Indus. Operating Corp.,*
   486 U.S. 800 (1988) ............................................................ 54

*Conn. Dep't of Children & Youth Servs. v. United States,*
   16 Cl. Ct. 102 (1989) .......................................................... 23

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr.*
*Trades Council,*
   485 U.S. 568 (1988) ............................................................ 44

*Griffin v. United States,*
   621 F.3d 1363 (Fed. Cir. 2010) ........................................... 26

*Keene Corp. v. United States,*
   508 U.S. 200 (1993) ............................................................ 23, 24, 25

*Klamath Irrigation Dist. v. United States,*
   113 Fed. Cl. 688 (2013) ...................................................... 39

*Lan-Dale Co. v. United States,*
   85 Fed. Cl. 431 (2009) ........................................................ 27

*Loveladies Harbor v. United States,*
  27 F.3d 1545 (Fed. Cir. 1994) .......................................... 15, 18, 25, 45

*Low v. United States,*
  90 Fed. Cl. 447 (2009) ....................................................... 26

*Lucas v. S.C. Coastal Council,*
  505 U.S. 1003 (1992) ................................................... 11, 19

*Matson Navigation Co. v. United States,*
  284 U.S. 352 (1932) ........................................................... 23

*Members of Peanut Quota Holders Ass'n v. United States,*
  421 F.3d 1323 (Fed Cir. 2005) ........................................... 47

*Morris v. United States,*
  33 Fed. Cl. 733 (1995) ....................................................... 57

*Nissim Corp. v. ClearPlay, Inc.,*
  374 Fed. App'x 987 (Fed. Cir. 2010) .................................... 41

*Penn Central Transp. Co. v. City of New York,*
  438 U.S. 104 (1978) ..................................................... 11, 19

*Petro-Hunt, L.L.C. v. United States,*
  105 Fed. Cl. 37 (2012) ....................................................... 46

*Res. Invs. v. United States Army Corps of Eng'rs,*
  151 F.3d 1162 (9th Cir. 1998) .................................... 2, 10, 47

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs,*
  531 U.S. 159 (2001) ........................................................... 45

*Stockton E. Water Dist. v. United States,*
  101 Fed. Cl. 352 (2011) ............................................... 47, 52

*Sys. Application & Techs., Inc. v. United States,*
  691 F.3d 1374 (Fed. Cir. 2012) ........................................... 55

*Tabb Lakes, Ltd. v. United States,*
  10 F.3d 796 (Fed. Cir. 1993) ....................................... 11, 31

*Trusted Integration, Inc. v. United States*,
   659 F.3d 1159 (Fed. Cir. 2011) .................23, 34, 39, 40, 42, 43, 46, 51

*U.S. Home Corp. v. United States*,
   108 Fed. Cl. 191 (2012) ........................................ 28, 29, 36

*United States v. Tohono O'odham Nation*,
   131 S. Ct. 1723 (2011)............................................... *passim*

## CONSTITUTIONAL AMENDMENTS

U. S. Const. amend. V .............................................................. 4

## FEDERAL STATUTES

5 U.S.C. § 702 ........................................................................ 8

28 U.S.C. § 1346(a)(2)........................................................... 10

28 U.S.C. § 1491 ........................................................... 4, 8, 10

28 U.S.C. § 1500 ............................................................ *passim*

33 U.S.C. § 1344 ..................................................................... 1

42 U.S.C. § 4321 ..................................................................... 8

42 U.S.C. § 4332 ................................................................... 35

## FEDERAL RULES

Fed. R. Civ. P. 41(b)............................................................. 56

## FEDERAL REGULATIONS

33 C.F.R. § 325.2(d)(3)......................................................... 35

40 C.F.R. § 1508 ................................................................. 35

78 Fed. Reg. 2939 (Jan. 25, 2013) ........................................ 24

## OTHER AUTHORITIES

American Bar Association, Recommendation Adopted by The
House of Delegates, 300 (Feb. 11, 2013)..............................................24

Emily S. Bremer & Jonathan R. Siegel, *Clearing The Path to
Justice: The Need to Reform 28 U.S.C. § 1500*, 65 Ala. L. Rev. 1
(2013).................................................................................................24

*Merriam Webster's Collegiate Dictionary* (10th ed. 1995) ......................41

## STATEMENT OF RELATED CASES

The Government has appealed the Court of Federal Claims' order granting Plaintiffs' certain costs. A69, Dkt. No. 248. On June 4, 2014, this Court *sua sponte* associated the two cases (Nos. 14-5069, 14-5099).

## INTRODUCTION

Twenty-five years after Plaintiffs applied for a federal permit to develop their land and sixteen years after they initiated litigation to vindicate the Government's deprivation of that property (following denial of the permit), the Department of Justice seized on a 2011 Supreme Court decision and convinced the Court of Federal Claims to dismiss Plaintiffs' suit on jurisdictional grounds. In *United States v. Tohono O'odham Nation*, 131 S. Ct. 1723 (2011), the Supreme Court explained that, irrespective of the relief sought, the Court of Federal Claims does not have jurisdiction over any claim whose operative facts are substantially the same as those comprising a claim pending in another court at the time of the filing. That is not the case here.

The dispute between these two parties has a tortured history. In 1987, Plaintiffs acquired land in Pierce County, Washington to construct a municipal landfill. They then spent several years conducting site investigations, producing environmental studies, and pursuing the requisite state and local permits. In 1989, the Army Corps of Engineers ("the Corps") improperly asserted jurisdiction under Section 404 of the federal Clean Water Act ("CWA"), 33 U.S.C. § 1344,

to require a duplicative permit for the filling of wetlands by the project. Plaintiffs vociferously protested this assertion on the basis that such CWA jurisdiction originally laid with the federal Environmental Protection Agency, it had delegated that responsibility to the state with respect to solid waste facilities, and that Washington's EPA-approved state solid waste permit requirements already included all of the wetland protection provisions of the federal regulations under Section 404. However, under threat by the Corps of imposition of major daily fines, and lacking pre-enforcement review at that time, on August 8, 1990, Plaintiffs applied for a CWA Section 404 permit.

The Corps then took *six years* to evaluate Plaintiffs' application. And, when it finally did, the Corps denied the request—a determination the Ninth Circuit Court of Appeals subsequently found the Corps had no business making in the first place (just as Plaintiffs had argued). *See Res. Invs. v. United States Army Corps of Eng'rs*, 151 F.3d 1162 (9th Cir. 1998).[1] Though the Circuit Court's ruling allowed Plaintiffs to

---

[1] References to the proceedings arising out of Plaintiffs' complaint filed in the Western District of Washington on October 31, 1996 are indicated by "*Resource I.*" References to the proceedings arising out of

2

move forward with the project, it could not—and did not—undue the harm caused by the Corps' erroneous assumption of jurisdiction, exceptional delay in evaluating the permit, and its faulty process in denying it.  As a result, Plaintiffs were wrongfully denied use of their land for nearly a decade.

Plaintiffs were met with similar governmental delay when they attempted to vindicate their rights.  For over ten years, Plaintiffs attempted to prosecute their takings claim before the Court of Federal Claims, but, at every turn, the Government dragged its heels.  That strategy is now being rewarded handsomely.

On June 10, 2011—thirteen years after the complaint in this case was filed, the Government, citing *Tohono*, 131 S. Ct. 1723, and arguing that the denial of the permit is an operative fact common to Plaintiffs' claims in *Resource I* and *Resource II*, moved to dismiss Plaintiffs' action in the Court of Federal Claims.  Notwithstanding that the permit denial is irrelevant to proving Plaintiffs' claims in either court and, even if it were relevant, the presence of this single fact alone does not meet

---

Plaintiffs' complaint filed in the Court of Federal Claims on May 4, 1998 are indicated by "*Resource II.*"

*Tohono*'s standard that the "operative fact**s**" be "substantially the same," the Court of Federal Claims granted the Government's motion. Consequently, after being denied use of their land for over a decade and being denied resolution of their takings claim for even longer, Plaintiffs have now been told they will be denied access to the courts—and the opportunity to vindicate their constitutional takings claim—*forever*.

## JURISDICTIONAL STATEMENT

Plaintiffs Resource Investments, Inc. ("RII") and Land Recovery, Inc. ("LRI") have asserted an unconstitutional taking of real property without compensation in violation of Amendment V of the United States Constitution. Jurisdiction existed in the United States Court of Federal Claims pursuant to 28 U.S.C. § 1491. On February 5, 2014, the Honorable Lawrence J. Block issued a final order granting the Government's motion to dismiss pursuant to 28 U.S.C. § 1500. A24–39. On March 6, 2014, Plaintiffs filed a motion for reconsideration. A750. While that motion was pending, Plaintiffs noticed their appeal on April 1, 2014. A783–84. On April 3, 2014, the Court of Federal Claims denied Plaintiffs' motion for reconsideration. A42-46. Plaintiffs then filed an amended notice of appeal on April 7, 2014. A785–87.

4

## STATEMENT OF THE ISSUES

In *Tohono*, 131 S.Ct. 1723, the United States Supreme Court recognized that if a plaintiff, upon filing at the Court of Federal Claims, has a suit pending in any other court "for or in respect to" the same claim, § 1500 bars jurisdiction over the claim in the Court of Federal Claims. The Court went on to hold that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the [Court of Federal Claims], if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Id.* at 1731.

In light of the Supreme Court's holding, this case presents the following two questions:

1. Whether the Court of Federal Claims erred by granting the Government's motion to dismiss for lack of subject matter jurisdiction pursuant to *Tohono*, 131 S. Ct. 1723, notwithstanding that the operative facts in Plaintiffs' district court action were neither substantially the same as nor sufficient to prove Plaintiffs' claims before the Court of Federal Claims.

2. Whether the Court of Federal Claims erred by granting the Government's motion to dismiss for lack of subject matter jurisdiction

5

pursuant to *Tohono*, 131 S. Ct. 1723, where the district court action was not pending when Plaintiffs filed their operative complaint in the Court of Federal Claims.

## STATEMENT OF THE CASE

To say "this litigation . . . is far from new" would be an understatement. A28. In 1987, Plaintiff RII purchased a 320-acre site in Pierce County, Washington for the purpose of constructing a 168-acre municipal solid waste landfill to serve the disposal needs of the community. A27, A95. Plaintiff LRI acquired a leasehold interest in the Site. A95.

**The Permitting Process**

Before they could begin construction, Plaintiffs were required to obtain a number of federal, state, and local permits. A282. On September 20, 1989, the Corps asserted jurisdiction over the landfill site and insisted that Plaintiffs acquire a Section 404 permit. A95, A282. Plaintiffs pursued the requisite permits and successfully acquired all the non-ministerial ones, with the exception of the Corps' Section 404 permit (notwithstanding that it acquired a state solid waste management permit whose requirements, incorporating the federal

Section 404 provisions under the delegated 404 authority from the EPA,
are virtually identical). A95, A110.

Having submitted their Section 404 application on August 8, 1990,
A96, Plaintiffs then waited six years to receive an answer. During that
time, they "constant[ly] badger[ed] and prodd[ed]" the Corps to no avail.
A285. In 1993, the Corps insisted that Plaintiffs consider long-hauling
waste to out-of-county sites as an actionable alternative. A27. One
year later (and nearly four years after the application was submitted),
the Corps stated for the first time that it would require an
environmental impact statement ("EIS"). A286. "[Y]ears of
administrative wrangling" followed, which ultimately led to the permit
application's denial on September 30, 1996. A27. That determination
was particularly surprising given that Plaintiffs had already acquired a
state solid waste permit, which required they demonstrate compliance
with the same wetland protection standards as adopted under Section
404 of the Clean Water Act. A96.

**District Court Litigation:** *Resource I*

Disappointed with the length of the process and the outcome,
Plaintiffs filed a complaint in the Western District of Washington,

7

asking the court to set aside the Corps' decision for failure to comply with the Administrative Procedure Act ("APA"). A27. This filing was Plaintiffs sole option given that the APA only provides for equitable relief, 5 U.S.C. § 702, the Court of Federal Claims has no equitable powers, A27 (citing 28 U.S.C. § 1491 (a)(2)), and Plaintiffs could not seek money damages because they did not yet know the nature of the taking pending outcome of the APA action (whether the taking was permanent or temporary).

Before the district court, Plaintiffs brought four claims, which collectively challenged the jurisdiction and propriety of the Corps' conduct during the permitting process. A425–73. Counts I and II were predicated upon the Corps' erroneous assumption of jurisdiction. A425-35. They are irrelevant to this appeal because the Court of Federal Claims correctly concluded there is no overlap between their operative facts and those in *Resource II*. A33. Counts III and IV, which the Court of Federal Claims found are relevant, were as follows:

- **Count III - Failure to Issue an EIS**: National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 and Corps' own regulations required preparation of an EIS before the permit could be denied on the basis of potentially significant environmental impacts of the proposed action. Despite failing to do so, the Corps denied the 404 permit

based on environmental grounds and without allowing for a public review period.  A435–45, ¶¶ 171–213.

- **Count IV - Improper Considerations/Procedures in Making The Permitting Decision**:  The Corps' adjudication of Plaintiffs' application was arbitrary and capricious under the APA by (1) <u>considering long haul waste as a practicable alternative</u>, in particular, because it was contrary to the project's purpose, could not be performed by Plaintiffs, disregarded local and state determinations, treated it as a non-wetlands alternative despite wetlands impact, had high costs, would damage employment and tax base, disregarded proposed wetlands mitigation, and would lead to adverse economic and environmental impacts; (2) <u>considering Horn Creek as a practicable alternative</u>, in particular, because it was not available to Plaintiffs, treated it as a non-wetlands alternative despite wetlands impact, would result in more environmental impact than the proposed development, use of Horn Creek as a landfill would contravene state and local requirements, and it would lead to adverse economic and environmental impacts; (3) <u>disregarding Washington State and local permits and certifications</u>, which established compliance with all applicable wetlands and groundwater requirements, and (4) <u>refusing to elevate the decision on the permit application to a higher level</u>.  A445–73, ¶¶ 214–317.

In an oral opinion, the district court denied all of Plaintiffs' claims, concluding that the Corps properly assumed jurisdiction and did not violate the APA during the permitting process.  A286.

Plaintiffs appealed the district court's ruling to the Ninth Circuit. Notably, in doing so, Plaintiffs abandoned Count III of the district court complaint, electing instead to focus on the jurisdictional issues and

9

Count IV.[2]  RJN Ex. A.[3]  On July 27, 1998, the Ninth Circuit ruled in Plaintiffs' favor, holding that the Corps had "unreasonabl[y]" asserted jurisdiction over the landfill site.  *Resource I*, 151 F.3d at 1169. Unconstrained by the Corps' determination, Plaintiffs were able to acquire the remaining, ministerial permits and commence the project, which became fully operational on December 13, 1999.

**The Court of Federal Claims Litigation:  *Resource II***

Out of concern for the statute of limitations, a few months before the Ninth Circuit issued its decision in *Resource I,*  on May 4, 1998, Plaintiffs filed their complaint in the Court of Federal Claims, asserting a Fifth Amendment takings claim and requesting monetary relief (as only the Court of Federal Claims can grant for takings claims over $10,000).  A70–92; 28 U.S.C. § 1491(a)(1); *cf.* 28 U.S.C. § 1346(a)(2). Because the Ninth Circuit had yet to resolve their case, Plaintiffs were unaware of the type of taking to which they could lay claim.

---

[2] As discussed in more detail below, this means that Count III was not pending at the time Plaintiffs filed their takings complaint in the Court of Federal Claims and is thus irrelevant under *Tohono*.

[3] "RJN" refers to the Motion Requesting Judicial Notice, which has been filed alongside this brief.

Accordingly, they asserted a permanent takings claim (assuming APA

appeal denial) and, in the alternative, a temporary taking (in the event

they succeeded on certain APA appeal claims). A86, ¶ 49.

Following the Ninth Circuit's decision, the Court of Federal

Claims ordered Plaintiffs to amend their complaint. A94. In doing so,

Plaintiffs clarified that their taking claim was temporary in nature and

articulated more precisely the nature of those allegations. A116–125.

As relevant here, they asserted the following theories (which are

followed by the operative facts required to prevail on each):

- ***Penn Central*/Non-Categorical Taking**: A plaintiff must demonstrate the (1) economic impact of the government regulation on the plaintiff, (2) extent to which the regulation has interfered with investment-backed expectations, and (3) character of the governmental action. *See Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978); *see also* A115–121, ¶¶ 54–71.

- ***Lucas*/Categorical Taking**: A plaintiff must demonstrate a complete deprivation of all economically viable use of his property. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1016 (1992); *see also* A116–17, ¶¶ 57–60.

- **Extraordinary Delay**: A plaintiff must demonstrate the time it took for an agency to make a decision was unreasonable in light of the charge, that the agency acted in bad faith, and the presence of the other *Penn Central* factors. *See, e.g., Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 803 (Fed. Cir. 1993); *see also* A121–23, ¶¶ 72–74.

11

Just as Plaintiffs' permitting process moved slowly, so too did their litigation before the Court of Federal Claims. Since the suit's commencement in 1998, a total of five Claims Court judges have presided over the case. A26. During that time, "[t]he parties [] spent significant time and resources on th[e] matter." *Id.* Just as Plaintiffs poked and prodded the Corps to issue a decision, they did what they could to move this case along. At nearly every turn, however, their efforts were rebuffed, as the Government effectively told Plaintiffs to pound sand.

At one point, the Government's gamesmanship became severe enough to warrant sanctions. On that occasion, defense counsel attempted to sneak in expert declarations *five years* after the close of discovery. A41, A127. Noting that the parties had already engaged in a lengthy and exhaustive two-year discovery process that long since passed, Plaintiffs responded to the Government's filing by moving to strike the declarations, noting the Government's substantial noncompliance with the Court's order ending discovery on liability issues. *Id.* The Court of Federal Claims agreed, struck the

Government's declarations and granted Plaintiffs' costs as compensation for having to bring the motions to strike.[4]  *Id.*

After filing summary judgment motions in 2000 and engaging in unsuccessful mediation (with Judge Emily C. Hewitt mediating), the parties filed renewed motions for summary judgment on November 29, 2005.  A59, Dkt. Nos. 130 and 132.  The Court of Federal Claims determined that the Ninth Circuit's decision in *Resource I*—concluding that the Corps unreasonably assumed jurisdiction—did not supply a basis for granting Plaintiffs' relief on their extraordinary delay claim.  A328.  Rather, in sharp contrast with the Court of Federal Claims' decision at issue here—finding that the operative facts in *Resource I* and *Resource II* were substantially the same—it concluded at summary judgment that "the issue in *Resource I* . . ., whether or not the Corps had jurisdiction . . . , is not the same issue as extraordinary delay."  *Id.*

_____

[4] Other disconcerting events include the Government's 2009 decision to hire Plaintiffs' expert—the expert they had used since at least 1999—as a federal employee.  A12.  Though the position was completely unrelated to this litigation, the Government attempted to prohibit Plaintiffs' expert from engaging Plaintiffs in any advisory role, threatening him with criminal and civil liability.  A14–16.  The Court of Federal Claims appropriately rebuffed the Government's efforts to stymie Plaintiffs' expert presentation.  A22.

Though the Court went on to find no dispute regarding the existence of numerous elements of Plaintiffs' claims, and awarding partial summary judgment thereon, it concluded that several required factual resolution by a jury.  A361.  By all accounts then, it appeared the parties were *finally* heading towards trial.

**Impact of *Tohono***

And then along came *Tohono*.  Approximately a dozen years after Plaintiffs' Court of Federal Claims' complaint was filed, the Supreme Court issued its decision in *Tohono*.   In contrast with its constant heel-dragging throughout the course of this litigation, less than a month and a half after *Tohono* came down, on June 10, 2011, the Government hurriedly filed a motion to dismiss.  A362, A68, Dkt. No. 234.  Some three years later, on February 5, 2014, the Court of Federal Claims granted the Government's motion.  A39.

Recognizing that post-*Tohono*, it could not simply rely upon the contrasting relief between *Resource I* and *Resource II* as a basis for assuming jurisdiction, the Court of Federal Claims laid out a roadmap

for its "operative facts" journey.[5]  A30–31.  In charting its course, the court determined that "two claims arise from substantially the same operative facts" when "the facts material to supporting a claim in one complaint are also necessary to support a claim in another complaint." A31.  Utilizing this standard, the court engaged in a claim-by-claim analysis, comparing the *Resource II* claims with the claims in *Resource I* and concluding that the denial of the permit is an "operative or material" fact common to the claims in both actions.  A33–34.

In particular, the court found that the permit denial in *Resource II* was an operative fact because without it, Plaintiffs "would have no takings claim."  A33.  The court likewise found that the permit denial was a material fact in *Resource I*.  It reasoned as to Count III from *Resource I*—Failure to Issue an EIS (a claim that notably was not pending when Plaintiffs filed their *Resource II* complaint)—there could be no NEPA violation without a permit denial.  A33.  And, as to Count IV—Improper Considerations, the permit denial constituted "the culmination of a series of allegedly improper acts taken by the Corps."

---

[5] As discussed below, until *Tohono*, it was settled law that § 1500 did not apply when two causes of action sought different relief. *Loveladies Harbor v. United States*, 27 F.3d 1545, 1552 (Fed. Cir. 1994).

A34. The result was that the court rested its entire operative facts analysis on the presence of a single fact: denial of the permit.

On March 6, 2014, Plaintiffs filed a motion for reconsideration, explaining that (1) the denial of the permit is not operative as to any of the claims in *Resource I* or *Resource II*; (2) even if it is *a* fact operative in both suits it cannot satisfy *Tohono*'s "substantially the same facts" standard because, by definition, this single fact is not sufficient to prove any of Plaintiffs' claims; and (3) Plaintiffs' amended complaint must be treated as the operative complaint for *Tohono* purposes because they did not have the option to dismiss and re-file. A750–81. On April 1, 2014, Plaintiffs noticed their appeal. A783.

On April 3, 2014, the Court of Federal Claims denied Plaintiffs' motion for reconsideration on the grounds that (1) the denial of the permit was operative as to Count III of the *Resource I* complaint because it was the denial that interrupted the EIS process and the resulting violation of NEPA and the Corps' regulations; (2) the "tenor" of Count IV in *Resource I* is that the Corps prematurely decided to deny the permit and a contrary conclusion would "artificial[ly] [] separate the Corps' actions leading up to the denial of the permit from the Corps'

16

final decision to deny the permit;" (3) the presence of one operative fact—denial of the permit—satisfies *Tohono* because it is dispositive (given that Plaintiffs could not argue any of their claims without the denial); and (4) the fact that Plaintiffs were unable to dismiss and re-file their initial *Resource II* complaint (rather than amend) is irrelevant. A44–46.

On April 7, 2014, Plaintiffs filed an amended notice of appeal, which incorporated the Court of Federal Claims' order denying Plaintiffs' reconsideration motion. A26. On May 29, 2014, the Government noticed its appeal of the Court of Federal Claims' order granting Plaintiffs' costs for filing their motions to strike. A69, Dkt. No. 248. On June 4, 2014, this Court *sua sponte* associated the two cases.

## SUMMARY OF THE ARGUMENT

As the lower court noted, *Tohono* "[a]lter[ed] decades of Court of Claims and Federal Circuit jurisprudence." A26. Prior to the Supreme Court's decision, the Court of Federal Claims was deemed to have jurisdiction over all cases that fell within its statutory bailiwick *provided* the operative facts in the plaintiff's complaint were not substantially the same as those in another pending action between the

17

parties or the relief requested in the two cases differed. *Loveladies Harbor*, 27 F.3d at 1552. In *Tohono*, the Supreme Court struck that second requirement. 131 S. Ct. 1731. As such, the Court of Federal Claims' jurisdiction is now confined to those suits in which there is no pending action that is "based on substantially the same operative facts," irrespective of the relief sought. *Id.*

To be sure, *Tohono* fundamentally altered the legal landscape for some litigants. But not Plaintiffs. Their cause of action in the Court of Federal Claims is not—and has never been—solely predicated upon the difference in relief between that sought below and that sought in *Resource I*. The claims and theories in the two actions at issue have always rested on solid and independent footing.

In *Resource I*, Plaintiffs pursued several claims that challenged the capacity and propriety of the Corps' decision to deny a Section 404 permit. To make that showing, Plaintiffs had to demonstrate either that the Corps improperly assumed jurisdiction to make a permitting decision (Counts I & II) or that it erred in how it went about doing so (Counts III & IV). In *Resource II*, Plaintiffs brought a permanent-cum-temporary takings claim. To make that showing, they had to

18

demonstrate either, under *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992), that the denial of the permit constituted a total deprivation of all economically viable use of their property, or, under *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978), that the permit denial stripped them of the property's economic value, it interfered with their investment-backed expectations, and was not sufficiently done in the public interest.  In addition, Plaintiffs asserted before the Court of Federal Claims an independent, extraordinary delay claim.  That claim required a showing that (1) the near ten-year delay in the permitting process (*N.B.*, not the permit denial) was unreasonable in light of the charge or that the agency assumed jurisdiction when it should not have, (2) the agency acted in bad faith, and (3) the other *Penn Central* factors. Given the divergent nature of the claims in each action and the operative facts upon which they rely, § 1500 is inapplicable.

Yet, the Court of Federal Claims held otherwise, concluding that the presence of a single, allegedly operative fact—permit denial— categorically stripped the Court of Federal Claims of jurisdiction. Specifically, the court found that "the denial of the permit was in fact not only operative but also dispositive . . . [because] but for denial of the

permit, plaintiffs would not have been able to argue these claims." A45. That conclusion turns *Tohono* on its head. As the Supreme Court explained, the relevant inquiry under *Tohono* is not what facts could be used to *disprove* plaintiff's claim but what facts are necessary to *prove* it.

To conclude that resolution of a single fact (permit denial) that could never, on its own, *prove* Plaintiffs' claims before the Court of Federal Claims satisfies *Tohono* would rip § 1500 from its statutory moorings. That's because the statute was drafted to embody principles of claim preclusion—the goal being to relieve the Government of the burden of defending against duplicative actions. But no claim preclusion test would prohibit litigation of a claim where a single element or fact of a multi-element claim had previously been resolved, particularly when that claim could not have been adjudicated in the earlier action. At best, collateral estoppel might be used to preclude litigation of the sole issue as to whether the government refused to allow Plaintiffs to use their land (*i.e.*, permit denial). Any other conclusion would collapse the two preclusion doctrines.

Just as importantly though, the Court of Federal Claims'
sweeping interpretation of § 1500 would do far more than guard against
duplicative litigation; it would strip large swaths of property owners of
their right to pursue constitutional claims that were never and could
never have been resolved in a district court. Neither *Tohono* nor the
plain language of § 1500 offer any indication of an intent to achieve
such a pernicious result, especially when constitutional rights are at
stake.

Moreover, even if one were to disregard the flawed nature of the
Court of Federal Claims' single-operative fact test, jurisdiction would
still exist to address and resolve Plaintiffs' taking claims because the
temporary takings theories underlying those claims share **no** operative
facts with any of the claims at issue in *Resource I*. The sole fact
identified by the Court of Federal Claims—denial of the permit—is
neither necessary nor sufficient to prove Plaintiffs' claims in either
*Resource I* <u>or</u> *Resource II*.

But even this analysis assumes too much. The reason being: the
claims set forth in the amended complaint cannot be considered to have
been "pending" for § 1500 purposes. Although this Court has recognized

21

that, notwithstanding the hyper-technical nature of such formalistic
rules, previously-filed plaintiffs seeking to invoke properly the Court of
Federal Claims' jurisdiction must dismiss and re-file their complaint,
Plaintiffs here cannot be faulted for not having done so because they
were specifically instructed by the Court of Federal Claims to alter their
allegations by amending their complaint.

At bottom, this is not a case like *Tohono* or *Central Pines Land Co.
v. United States*, 697 F.3d 1360 (Fed. Cir. 2012), where plaintiffs simply
repackaged their district court allegations, slapped on new headings,
and proceeded in the Court of Federal Claims with new requests for
relief. To the contrary, the claims at issue in the two actions turn on
wholly different theories and entirely independent evidence. Because
resolution of the *Resource I* claims could not in any way dispositively
resolve the claims now before this Court, neither § 1500 nor any of the
concerns identified in *Tohono* are implicated. Accordingly, this Court
should find the Court of Federal Claims has jurisdiction and reverse the
Court of Federal Claims' decision dismissing this action.

## STANDARD OF REVIEW

This Court reviews de novo the Court of Federal Claims' dismissal for lack of subject matter jurisdiction. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

## ARGUMENT

## II. PLAINTIFFS' CLAIMS BEFORE THE COURT OF FEDERAL CLAIMS ARE NOT "BASED ON SUBSTANTIALLY THE SAME OPERATIVE FACTS" AS THOSE IN *RESOURCE I.*

This case concerns the interpretation and proper application of 28 U.S.C. § 1500. Passed in 1868, § 1500 was intended to prevent "residents of the Confederacy who had involuntarily parted with property (usually cotton) during the [Civil] war" from having multiple opportunities to recover by suing individual federal officials in one court and the United States in the Court of Federal Claims, relying upon the same facts in both actions. *Keene Corp. v. United States*, 508 U.S. 200, 206 (1993). The statute was necessary because "[a]t that time a judgment in another court had no res judicata effect in a subsequent suit against the United States in the Court of Claims." *Conn. Dep't of Children & Youth Servs. v. United States*, 16 Cl. Ct. 102, 104 (1989); *id.* (Section 1500 was designed "to force an election when both forums could

23

grant the same relief, arising from the same operable facts"); *see also Matson Navigation Co. v. United States*, 284 U.S. 352, 355–56 (1932). Today, however, claim preclusion doctrines prohibit a subsequent suit against the government itself following a judgment against a federal official. Nonetheless, § 1500 remains and thus must be interpreted and applied.[6]

As with any issue of statutory construction, the Supreme Court's analysis of 28 U.S.C. § 1500 has always begun with the statute's plain language. *Keene*, 508 U.S. 200; *Tohono*, 131 S. Ct. at 1727. Section 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim *for or in respect to* which the plaintiff or his assignee has pending in any other court any suit or process

---

[6] Noting this change in preclusion law and thus the outdated justification for § 1500, the Administrative Conference of the United States ("ACUS") and its attorneys have advocated for Section 1500's reform. *See, e.g.*, 78 Fed. Reg. 2939 (Jan. 15, 2013); Emily S. Bremer & Jonathan R. Siegel, *Clearing The Path to Justice: The Need to Reform 28 U.S.C. § 1500*, 65 Ala. L. Rev. 1 (2013). Likewise, the American Bar Association House of Delegates has adopted a resolution calling upon Congress to implement ACUS's recommendation. American Bar Association, Recommendation Adopted by The House of Delegates, 300 (Feb. 11, 2013), *available at* http://tinyurl.com/mw5d3wv. Even the Supreme Court in *Tohono* invited Congress to fix the problem that is § 1500. 121 S. Ct. at 1731.

> against the United States or any person who, at
> the time when the cause of action alleged in such
> suit or process arose, was, in respect thereto,
> acting or professing to act, directly or indirectly
> under the authority of the United States.

In *Keene*, the Supreme Court concluded that "for or in respect to" the same claim means the claim at issue is "based on substantially the same operative facts . . . [provided] there [i]s some overlap in the relief requested." 508 U.S. at 212. Thus, the Court left open the question "whether two actions based on the same operative facts, but seeking completely different relief, would implicate § 1500." *Id.* at 213.

In *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc), this Court answered that question in the negative. It held that a suit in the Court of Federal Claims is not "for or in respect to" a pending claim even if it involves identical causes of action so long as the requested relief differs. *Id.* Accordingly, under *Loveladies*, for a claim filed in the Court of Federal Claims to have been precluded under § 1500, "the claim pending in another court [had to] arise from the same operative facts, *and* [] seek the same relief." *Id.* at 1551 (emphasis added). So *Loveladies* stood for nearly two decades.

25

That is, until *Tohono*. In *Tohono*, the Supreme Court held that, irrespective of the relief sought, the Court of Federal Claims only has jurisdiction under § 1500 over those claims that are not "based on substantially the same operative facts" as those in a pending district court action. *Tohono*, 131 S. Ct. at 1731. In turn, the Court found the Court of Federal Claims had no jurisdiction over the claims at issue there because the only difference between the claim in the pending district court action and the one in the Nation's Court of Federal Claims complaint was the relief requested. *Id*. Otherwise, the complaints described "almost identical breaches of fiduciary duty." *Id*. Indeed, "the Nation could have filed two identical complaints, save the caption and prayer for relief, without changing either suit in any significant respect." *Id*.

Much maligned before *Tohono*,[7] § 1500 has received even more scrutiny since.[8] That's because Congress has required plaintiffs with

---

[7] *Griffin v. United States*, 621 F.3d 1363, 1364 (Fed. Cir. 2010) (Plager, J., dissenting) (explaining that "§ 1500 has long outlived its purpose"); *Low v. United States*, 90 Fed. Cl. 447, 455 (2009) (tracking cases and commentary critiquing § 1500).

[8] *See supra* note 6.

claims against the United States to split them "into two actions to obtain different forms of relief necessary to make the plaintiff[s] whole." *Id.* at 1734 (Sotomayor, J., concurring). The result: Section 1500 has become a "monumental 'trap for the unwary,'" leaving some plaintiffs "with no forum [] [to] hear [their] claims." *Lan-Dale Co. v. United States*, 85 Fed. Cl. 431, 433 (2009).

But Plaintiffs in this case are not here to grapple with § 1500 on this broader level. Indeed, they need not because their basis for jurisdiction has never been solely predicated upon a *Loveladies*-type distinction. Rather, in contrast with the plaintiffs in *Tohono* and other such cases whose jurisdictional foundations were predicated upon repackaged allegations differentiated only by the relief requested, 131 S. Ct. at 1731; *see also Central Pines,* 697 F.3d at 1365. Plaintiffs in this case asserted entirely distinct claims in the district court and the Court of Federal Claims. Concluding otherwise, the lower court erroneously applied § 1500 jurisprudence and *Tohono.*

To demonstrate under *Tohono* that a claim pending in the Court of Federal Claims is "based on substantially the same operative facts" as a claim pending before a district court, a defendant, unencumbered by the

27

relief requested, must (1) identify facts that are operative to the plaintiff's claims in the Court of Federal Claims, (2) establish that those same facts are operative as to plaintiff's claims in the district court, **and** (3) demonstrate that these overlapping operative facts substantially comprise the claims in both courts.  Here, the Government did not satisfy any of these requirements, much less all three.   Accordingly, this Court should reverse.

### A.    Section 1500 is Not Implicated Because The Denial of a Permit Was Not an Operative Fact in *Resource II*

Before proceeding further, it is sensible to get back to basics.  Let's start with the word "operative."  Unfortunately, "the Supreme Court in *Tohono* did little to explain what is meant by 'operative facts.'"  *U.S. Home Corp. v. United States*, 108 Fed. Cl. 191, 195 (2012).  But one thing is certain.  Mere duplication of some language between two complaints is not enough—that's because the allegations may well be nothing more than background facts.  *See Central Pines Land Co.*, 697 F.3d at 1365 (finding facts between claims substantially similar where they were "not mere background facts").  Thus, courts must be careful to distinguish between such "background facts, which describe the context for the claims presented in each suit, and operative facts, which provide

the essential elements of the government conduct at issue in the two suits." *U.S. Home Corp*, 108 Fed. Cl. at 195. Though the specific legal theories underlying the claims do not matter, *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013), the "facts parties must prove" to prevail on those claims do. *Tohono*, 131 S. Ct. at 1730. Accordingly, the Court of Federal Claims appropriately took "into consideration the nature of the legal arguments made in each complaint." A31. But what it got right on that front, it got wrong on another. The Court erroneously conflated background facts with material facts.

The Court of Federal Claims identified one—and only one—fact fatal to its jurisdiction: denial of the permit. But that denial is irrelevant to Plaintiffs' temporary taking claims in *Resource II*. Here's why.

In *Resource II*, Plaintiffs asserted both a permanent taking claim and, in the alternative, a temporary taking claim. A86. They did so because at that time, the taking appeared to be permanent but they could not definitively characterize it as such until the Ninth Circuit definitively resolved their *Resource I* claims. A85–86, ¶ 46 (noting in their *Resource II* complaint that *Resource I* was still pending before the

29

Ninth Circuit). Once it did, Plaintiffs amended their Court of Federal Claims' complaint, articulating more precisely the theories underlying their temporary taking claim. A115–123, ¶¶ 54–74. The denial of the permit is irrelevant to all of them.

### 1. *Lucas/Penn Central* Claims

Specifically, whether the permit was denied or not has no bearing on Plaintiffs' *Lucas* and *Penn Central* claims. Of course, Plaintiffs must prove a deprivation of property in order to make out their takings claim, but the mere assertion of jurisdiction by the Corps—as distinct from the permit denial—constituted a deprivation. That is, once the Corps assumed jurisdiction for the permitting decision, Plaintiffs could not make use of their land even once they had all of the other applicable permits. If that jurisdiction was improper (as the Ninth Circuit said it was), every day thereafter that Plaintiffs were precluded from developing and utilizing their property constituted an unconstitutional deprivation (provided the other *Lucas* and/or *Penn Central* factors are satisfied), with the duration of the taking being determined by the length of delay caused by the assertion of jurisdiction. Thus, the denial of the permit is not an operative fact under any of the taking theories

before this Court.  It merely provides the distinction between a permanent and temporary taking.

## 2.  Extraordinary Delay Claim

Likewise, the permit denial has zero relevance to the extraordinary delay claim.  The Court of Federal Claims found otherwise, concluding that Plaintiffs' articulation of an extraordinary delay theory for their takings claim did "not alter the *identity of the operative facts* at issue—namely, the facts underlying the denial of the permit by the Corps."  A37 (emphasis in original).  But that simply begs the question.  The Court of Federal Claims never explained how the denial of a permit is actually of any significance to the extraordinary delay claim.

Nor could it have.  In the extraordinary delay context, before courts turn to the *Penn Central* factors, they first inquire as to the agency's bad faith and the length of the regulatory delay (in light of the complexity of the agency's charge).  *Bass Enters. Prod. Co. v. United States*, 381 F.3d 1360, 1366 (Fed. Cir. 2004); *Appolo Fuels, Inc. v. United States*, 381 F.3d 1338, 1351 (Fed. Cir. 2004); *Aloisi v. United States*, 85 Fed. Cl. 84, 93 (2008); *see also Tabb Lakes, Ltd. v. United*

31

*States,* 10 F.3d 796, 803 (Fed. Cir. 1993). At no point during that multiple-step analysis must courts inquire whether a permit was denied. Indeed, the very nature of an extraordinary delay claim is that it rests on the *non-issuance of a decision* due to needless delay by a government entity (or, alternatively, as here, its erroneous assumption of jurisdiction). The Court of Federal Claims itself recognized as much, explaining, in the context of its summary judgment determination, that it was <u>not</u> aware "of any authority requiring it to hold that an extraordinary delay claim is not cognizable once an agency has acted, thus ending the delay." A326. Because, by the Court of Federal Claims' own admission, the one fact it identified as operative has no relevance to Plaintiffs' extraordinary delay claim, that fact could not supply a basis for the court to decline jurisdiction over the claim.

### B. Section 1500 is Not Implicated Because The Denial of a Permit Was Not an Operative Fact in *Resource I*

With respect to the district court action, the Court of Federal Claims concluded the permit denial was operative because, as to Count III (the NEPA/Corps' regulations-based-failure-to-prepare-an-EIS claim), there could be no NEPA violation without the denial of the permit and, as to Count IV (the APA-based-improper-considerations

32

claim), the permit denial constituted "the culmination of a series of allegedly improper acts taken by the Corps."[9]  A33–34.  The Court of Federal Claims was wrong on both accounts.

### 1.     Count III: Violations of NEPA And The Corps' Own Regulations

In analyzing the significance of the denial of the permit, the Court of Federal Claims failed to recognize that Count III does not provide a basis for comparison because it was not pending at the time Plaintiffs' filed their Court of Federal Claims complaint on May 4, 1998.  As this Court explained in *Central Pines*, "subject matter jurisdiction depends on the state of things *at the time of the Claims Court action that was brought*."   697 F.3d at 1364 (emphasis added).  In applying § 1500, courts must "look to the facts as they exist when a plaintiff filed his [Court of Federal Claims] complaint . . . .  If a plaintiff, upon filing, has a suit pending in any other court 'for or in respect to' the same claim, § 1500 bars jurisdiction over the [Court of Federal Claims] suit."  *Id.*

---

[9] The Court of Federal Claims correctly concluded that all of the operative facts in this action differ from the operative facts comprising the jurisdictional claims (Counts I & II) in *Resource I.*  A33.

By the time Plaintiffs filed their Court of Federal Claims complaint, the district court had resolved all of their claims in the Corps' favor and Plaintiffs' appeal was pending before the Ninth Circuit. A286 (citing Pl. MSJ Ex. 56; Defs. MSJ Ex. 2 (indicating district court issued oral decision on September 16, 1997)). Accordingly, it is the claims that were "pending" before the Ninth Circuit that supply the basis for comparison under § 1500. The Government itself has recognized as much. A367–68 (explaining that the Ninth Circuit appeal constitutes the "suit," which was pending at the time Plaintiffs filed their complaint at the Court of Federal Claims). Yet, that appeal did not include a challenge to the district court's resolution of Count III. RJN Ex. A. Count III was therefore not pending when Plaintiffs filed their Court of Federal Claims complaint and, contrary to the Court of Federal Claims' analysis, it therefore could not be employed as part of the *Tohono* inquiry.[10]  *See also Trusted Integration*, 659 F.3d at 1165

---

[10] Even if this Court were to treat Count III as if it were pending at the time Plaintiffs filed their Court of Federal Claims complaint, it still would not supply a basis for applying § 1500 because denial of the permit was not an operative fact in proving that claim. To prevail on their NEPA-based claim, Plaintiffs only had to demonstrate that the proposed project would significantly affect the environment and the

(engaging in a "comparison of the relevant claims" as they existed at the time plaintiff filed its Court of Federal Claims complaint).

### 2. Count IV: Improper Considerations/Procedures in Making Permit Decision

As for Count IV, the denial of the permit is not an operative fact in proving that claim. Rather than analyze the permit denial in the context of the "elements" or "operative facts" of Count IV, as required by *Tohono*, the Court of Federal Claims employed much more imprecise and squishy language, discussing the fact as it related to the "tenor" of Plaintiffs' claim. A45. In fudging its analysis, the Court of Federal Claims' only meaningful response to Plaintiffs' contention that the permit denial is irrelevant was its characterization of Plaintiffs' challenges to the Corps' faulty procedures as being demonstrative of bias. *Id.* That is, the court claimed that Plaintiffs' own theory was that

---

Corps' permitting decision was based on environmental grounds. A435–45, ¶¶ 171-213 (citing 42 U.S.C. § 4332(C); 40 C.F.R. § 1508.9; 33 C.F.R. Part 325). The denial of the permit was therefore irrelevant. The Court of Federal Claims' conclusion otherwise, A44, confuses a plaintiff's motivation for bringing a claim (which, here, was admittedly the permit denial) with the operative facts that comprise it.

the faulty procedures were simply a symptom of the larger problem: the Corps' bias against them and its desire to deny the permit. *Id.*

Whether Plaintiffs believe that or not, at bottom, they did not have to demonstrate bias or permit denial to prove their claim in Count IV. To the contrary, all they had to prove to prevail on that claim was that the Corps erred by (1) considering long haul waste as a practicable alternative, (2) considering Horn Creek as a practicable alternative, (3) disregarding Washington State and local permits and certifications, or (4) refusing to elevate the decision on the permit application to a higher level. A445–73, ¶¶ 214–317. Accordingly, any contention by Plaintiffs that the Corps was biased and predisposed to deny the permit was not operative in proving their claim. Rather, it was a background fact, which is irrelevant under *Tohono. U.S. Home Corp.*, 108 Fed. Cl. at 195.

Stated differently, Plaintiffs' APA-based process claim did not turn on the permitting decision itself but on the propriety of the process involved in arriving at that decision. Apparently displeased with that conclusion, the Court of Federal Claims fell back on the ill-conceived assertion that "it would be artificial to separate the Corps' actions

36

leading up to the denial of the permit from the Corps' final decision to deny the permit." A45. It offered no authority to support that assertion.

This Court should not countenance such an ungrounded position, as it would collapse all process-based claims, most notably APA claims, with those addressing the injury underlying them. Neither the plain language of § 1500 nor the decision in *Tohono* afford any basis for adopting such an unprecedented definition of the "same claim." That the distinction with which the Court of Federal Claims took issue is real is demonstrated by the fact that if the district court had sided with Plaintiffs with respect to these claims, the relief afforded need only have been a new and corrected permitting process, not granting of the permit. Accordingly, the permit's denial was not an operative fact in *Resource I*.

C. **Even if The Denial of The Permit Constitutes** *an* **Operative Fact Common to Claims in** *Resource I & II*, **The Court of Federal Claims Still Had Jurisdiction Because The Presence of This One Fact Alone Does Not Satisfy The "Substantially  The Same" Standard**

1. **Under** *Tohono*, **The Claims Presented in The Two Suits Must Be Based on Substantially Similar Facts**

Moving on to the "substantially the same" language.  It is on this point that Plaintiffs believe the Court of Federal Claims took a particularly problematic left turn.  Read in full, the *Tohono* Court explained, "Two suits are for or in respect to the same claim, precluding jurisdiction in the Court of Federal Claims, if they are based on substantially the same operative facts."  131 S. Ct. at 1731.  Thus, it is the suits themselves that must be based on the same set of relevant and material facts.  This part the lower court got right.  What it got wrong is that the operative facts are not those that may *disprove* Plaintiffs' claim.  Nor may a single operative fact satisfy *Tohono*'s "substantial similarity" requirement.

a. **Operative Facts Are Those That May Prove, Not Disprove, Plaintiffs' Claims**

The Court of Federal Claims arrived at its erroneous conclusion here by adopting a distorted interpretation of *Tohono*.  Specifically, the

court held that the presence of a single, allegedly operative fact—permit denial—stripped it of jurisdiction because "but for the denial of the permit, plaintiffs would not have been able to argue these claims." A45; *see also* A33 ("had the Corps granted the permit, plaintiffs would have no takings claim"). In other words, the court concluded that the relevant operative facts are those necessary to *disprove* a plaintiff's claims.

The lower court had it backwards. Under *Tohono*, what matters are the facts necessary to *prove* the claims, not those that could *disprove* them. Indeed, applying *Tohono* in *Trusted Integration*, 659 F.3d at 1169–70, this Court recognized as much, explaining that it was guided by an inquiry as to whether the evidence would "support and establish" the claims in both cases. *See also Tohono*, 131 S. Ct. at 1730 (explaining that appropriate inquiry under § 1500 is whether the evidence would "support and establish" the claims in both cases, not whether it would *disprove* them); *Klamath Irrigation Dist. v. United States*, 113 Fed. Cl. 688, 714 (2013) (applying *Tohono* and identifying "the facts needed to prove the takings action").

39

In fact, the lower court itself started out by pronouncing this principle, explaining that "two claims arise from substantially the same operative facts" when "the facts material to *supporting* a claim in one complaint are also necessary to *support* a claim in another complaint." A31 (emphasis added). But it abandoned this formulation when it moved to the next step, choosing instead to focus on facts that would preclude the claims from arising in the first place rather than those that support them as they currently exist. A45; *see also* A33. Were the test as the lower court proposed, the Court of Federal Claims would arguably never have jurisdiction where two cases are pending because the Government could always, for example, point to standing as a fact that could undermine plaintiff's claim in both actions.

That the *Tohono* Court did not espouse the framework employed by the Court of Federal Claims here is evidenced by its repeated use of the plural "facts," not "fact." One fact (or the absence of one fact) can only disprove a claim. Multiple facts are typically necessary to prove one. Thus, the Court explained that the relevant inquiry is whether the claims are "based on substantially the same operative facts." *Tohono*, 131 S. Ct. at 1727; *Trusted Integration*, 659 F.3d at 1170. The Court's

holding presumed there would be *multiple* facts to compare, not just one that could disprove a claim.

> **b.** **The Presence of a Single Operative Fact Does Not Satisfy *Tohono's* "Substantial Similarity" Requirement**

And the overlap among those facts must be "substantial." *Id.* "Substantial" is defined as "considerable in quantity" or "significantly great." *Merriam Webster's Collegiate Dictionary*, 1174 (10th ed. 1995), *available at* http://www.merriam-webster.com/dictionary/substantial; *see also Nissim Corp. v. ClearPlay, Inc.*, 374 Fed. App'x 987, 991 (Fed. Cir. 2010) (defining "substantial" as "being largely but not wholly that what [sic] is specified") (quoting *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003)).  By definition then, the presence of a single operative fact, when the claims in each action contain numerous other operative facts, cannot be "substantial."   Any other reading would render meaningless the Supreme Court's use of that word.  Accordingly, even if the Corps' denial of the permit were somehow relevant to *prove* rather than *disprove* Plaintiffs' claims here, the Court of Federal Claims would still have erred.

To suggest otherwise—that is, that the presence of a single, non-dispositive fact necessary to prove a claim could satisfy § 1500—would undermine the policy upon which § 1500 rests. As the Supreme Court explained, § 1500 was designed to "save the Government from burdens of redundant litigation," as it was being forced to relitigate claims simply because "judgments in suits against officers were not preclusive in suits against the United States." *Tohono*, 131 S. Ct. at 1730. It is for this reason the determination as to whether two suits are for or in respect to the same claim is informed by principles of res judicata. *Id.* ("[c]oncentrating on operative facts is also consistent with the doctrine of claim preclusion or res judicata," which is "embodied in the statute"); *see also Trusted Integration*, 659 F. 3d at 1164 ("whether two suits arise from substantially the same operative facts for purposes of that provision can be informed by how claims are defined for res judicata purposes"). In other words, the "substantial overlap in operative facts" required to invoke a § 1500 bar after *Tohono* must be equivalent or at least comparable to that for claim preclusion. 131 S. Ct. at 1731.

But neither the doctrine of res judicata nor the principles upon which it is based are implicated by the presence of a single operative

42

fact, particularly when there are numerous other non-overlapping factors necessary to resolve the issues in each case. Indeed, to invoke § 1500's jurisdictional bar, the evidence from the district court action must do more than simply support the *Resource II* claims, it must both "support *and establish*" them.[11] *Tohono*, 131 S. Ct. at 1730 (emphasis added) (characterizing the relevant inquiry as, "Would the same evidence support and establish both the present and the former cause of action."); *Trusted Integration*, 659 F.3d at 1169, 1170 (same). Stated differently, if the operative facts necessary to prove the claim in the district court are insufficient, without more, to prove the claim in the Court of Federal Claims, § 1500 does not deprive the Court of Federal Claims of jurisdiction. *Id.* at 1169 (finding jurisdiction where evidence underlying Court of Federal Claims claim "was insufficient to entitle the plaintiff to relief in the prior suit"); *see also Tohono*, 131 S. Ct. at 1730.

---

[11] This is the language of the "evidence" test highlighted by the *Tohono* Court. 131 S. Ct. at 1730. The Court also identified the "act or contract" test as relevant. *Id.* As explained below, that test similarly does not alter the outcome here. *See infra* at p. 52.

Any other rule would create serious mischief. A rule that prevents adjudication of a claim because a "necessary but insufficient" fact presented in the Court of Federal Claims was or could be resolved in the district court action would do much more than simply "save the Government from the burdens of redundant litigation"—most notably because the litigation is not "redundant" in that there are still elements and facts that would need to be resolved before an adjudication could be rendered. It would sweep within its grasp large swaths of claims whose resolution was neither foregone nor dictated by preclusion principles. That's not *Tohono*. That's *Tohono* on steroids. Section 1500 was not designed to effectuate a government windfall, but simply reduce redundancy. And that's why the test is whether the facts in one action *establish* a claim in the other, not whether there are a couple of facts that are non-dispositive but relevant to each.

A contrary interpretation of § 1500 is particularly problematic where, as here, constitutional rights are at stake. The doctrine of constitutional avoidance requires that where there are two interpretations of a statute, one of which would raise "serious constitutional problems," *Edward J. DeBartolo Corp. v. Fla. Gulf Coast*

44

*Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988), courts must "construe the statute to avoid such problems." *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 173 (2001) (quoting *DeBartolo*, 485 U.S. at 575). Construing the statute as the Court of Federal Claims did could deny plaintiffs, such as those here, of their "right to have the Corps' permit denial reviewed, without being placed in the position of having to give up a substantial legal right protected by the Takings Clause of the Constitution." *Loveladies Harbor*, 27 F.3d at 1555. That is especially the case in situations such as this where the governing statute requires that plaintiffs obtain a time-consuming resolution from a district court, including any appeals, regarding the type of takings claim he or she has before he or she can press the claim before the Court of Federal Claims. Accordingly, the doctrine of constitutional avoidance militates in favor of interpreting § 1500 so as to allow for adjudication of Plaintiffs' taking claims.

> ### 2. The Operative Facts Underlying Plaintiffs' *Resource II* Claims Are Not Substantially Similar to Their *Resource I* Claims

Proper application of the preclusion doctrines envisioned by *Tohono* dictates that § 1500 is inapplicable to the asymmetrical claims

at issue here.  As stated above, appropriate inquiry requires that, upon

receiving a complaint in a case where there is another action pending in

district court, the Court of Federal Claims must first isolate those facts

that are necessary to prove each of the plaintiff's claims, then do

likewise with the district court complaint, and decide whether they are

substantially the same.  *Trusted Integration*, 659 F.3d at 1164–65; *see

also Petro-Hunt, L.L.C. v. United States*, 105 Fed. Cl. 37, 43 (2012)

(explaining that "court must first isolate the facts in the complaint that

are 'operative,' i.e., those that must be proven in order to recover on a

given claim," and if the "differences in those operative facts can serve to

render two claims dissimilar," then § 1500 is not implicated) (citations

omitted).  To qualify as "substantially the same," the facts for one cause

of action must be both operative *and* dispositive to the other.  *Trusted

Integration*, 659 F.3d at 1170 (explaining that the "overlapping evidence

need[s] to be both relevant to and legally operative *to prove* the prior

claim") (emphasis in original); *id.* at 1169 (evidence must not just

support, but "support *and* establish the district court counts")

(emphasis in original).  And vice versa.  Though two complaints may

include "two seemingly similar claims," jurisdiction will lie if they are

"distinct claims based on distinct proofs." *Stockton E. Water Dist. v. United States*, 101 Fed. Cl. 352, 356 (2011). It is this framework we utilize in analyzing the issues below.

In the original complaint filed in the Court of Federal Claims, Plaintiffs mounted a permanent takings claim but included an alternative temporary taking claim that was contingent upon the Ninth Circuit's resolution of *Resource I.* A86, ¶ 49. When in 1998 the Ninth Circuit Court of Appeals concluded that the Corps did not have jurisdiction to issue or deny a permit for use of the land at issue the permanent taking claim morphed into Plaintiffs' alternatively alleged temporary taking. *Res. Invs.*, 151 F.3d at 1162.

As with all takings claims, Plaintiffs were required to first demonstrate they had a property interest of which they were being deprived and then establish the government appropriated the property in part or in whole for the public interest. *Members of Peanut Quota Holders Ass'n v. United States*, 421 F.3d 1323, 1330 (Fed Cir. 2005). To demonstrate they are entitled to compensation, Plaintiffs offered three theories rooted in regulatory takings case law: *Penn Central*/Non-Categorical Taking; *Lucas*/Categorical Taking; and Extraordinary

47

Delay.  A115–121, ¶¶ 54–71, A115–16, A121–22.  Confronted with these claims, under *Tohono* and § 1500, the Court of Federal Claims was tasked with resolving whether the operative facts were substantially the same as the operative facts underlying Claims III and IV in *Resource I*.

While Plaintiffs continue to disagree with the Court of Federal Claims' conclusion that permit denial is an operative fact necessary to prove all of their claims (though they are in agreement it is irrelevant to Counts I and II in the *Resource I* complaint), *see supra* at pp. 32-37, even if accepted as true, jurisdiction would still lie at the Court of Federal Claims because the operative facts in each action are not substantially similar, nor sufficient to prove the claims in the other case.  The charts below offer a visual of the single operative fact found to exist by the Court of Federal Claims in comparison with the remaining, non-overlapping operative facts relevant to each claim before the Court of Federal Claims and the district court:

| COMPARISON OF OPERATIVE FACTS: COUNT III FAILURE TO PERFORM EIS CLAIM (DIST CT) V. TAKINGS CLAIMS (CLAIMS CT) | | | | | |
|---|---|---|---|---|---|
| | Operative Facts of District Court Claim for Failure to Perform EIS | | | | |
| Operative Facts of Court of Federal Claims Takings Claims | Permit Denied | Project Deemed to Have Significant Environmental Impacts | EIS never prepared | Environmental Assessment as Inadequate EIS Substitute | Relevant Environmental Impacts Not Considered |
| *Lucas* Claim | | | | | |
| Permit Denied | ▓ | | | | |
| Complete Deprivation of All Economically Viable Use of Their Property | | | | | |
| *Penn Central* Claim | | | | | |
| Permit Denied | ▓ | | | | |
| Deprivation of Economic Use of Proposed Landfill Site | | | | | |
| Significant Capital Investment Went Into Landfill Site With Expectation of Development | | | | | |
| Character of the Government Action | | | | | |
| Extraordinary Delay Claim | | | | | |
| Permit Denied | ▓ | | | | |
| Duration Unreasonable in Light of Charge | | | | | |
| Agency Acted in Bad Faith | | | | | |
| *Penn Central* Factors | | | | | |

| COMPARISON OF OPERATIVE FACTS: COUNT IV IMPROPER CONSIDERATIONS/PROC. CLAIM (DIST CT) V. TAKINGS CLAIMS (CLAIMS CT ) | | | | | |
|---|---|---|---|---|---|
| | Operative Facts of District Court Improper Considerations/Procedures Claim | | | | |
| **Operative Facts of Court of Federal Claims Takings Claims** | Permit Denied | Improper Consideration of Long Haul Waste as a Practicable Alternative | Improper Consideration of Horn Creek as a Practicable Alternative | Disregard of State and Local Certifications | Refusal to Elevate |
| ***Lucas* Claim** | | | | | |
| Permit Denied | ▓ | | | | |
| Complete Deprivation of All Economically Viable Use of Their Property | | | | | |
| ***Penn Central* Claim** | | | | | |
| Permit Denied | ▓ | | | | |
| Deprivation of Economic Use of Proposed Landfill Site | | | | | |
| Significant Capital Investment Went Into Landfill Site With Expectation of Development | | | | | |
| Character of the Government Action | | | | | |
| **Extraordinary Delay Claim** | | | | | |
| Permit Denied | ▓ | | | | |
| Duration Unreasonable in Light of Charge | | | | | |
| Agency Acted in Bad Faith | | | | | |
| *Penn Central* Factors | | | | | |

As these charts make readily apparent, even if the permit denial constitutes *an* operative fact necessary to support the claims in both actions, its presence does little more than establish one aspect of the Court of Federal Claims action. To prevail on their takings claims,

Plaintiffs must *also* demonstrate either (1) under *Penn Central*, deprivation of economic use of the landfill site, significant investment into the site with an expectation of development, and the character of the government action, (2) under *Lucas*, complete deprivation of all economically viable use of their property, or (3) under an extraordinary delay theory, that the duration of the permit review process was unreasonable in light of the agency's charge or the agency improperly assumed jurisdiction, the agency acted in bad faith, and the other *Penn Central* factors. In addition, *Resource II* requires proof of all the facts establishing Plaintiffs' damages. None of these facts were present or could otherwise have been proven by *Resource I*.

As such, application of the preclusion test articulated in *Tohono* and expounded upon by this Court in *Trusted Integration* dictates that the Court of Federal Claims certainly has jurisdiction over Plaintiffs' temporary takings claims. Under these cases, the identified operative facts must not only support but *establish* the claims in both the district court and the Court of Federal Claims actions. *Tohono*, 131 S. Ct. at 1730; *Trusted Integration*, 659 F.3d at 1169–70. While there might be some preclusive effect as to the one fact—permit denial—that the Court

of Federal Claims found operative in both actions, the presence of that single fact, without more, certainly does not "establish" or resolve the claims before this Court. 131 S. Ct. at 1730. Proving the Corps denied Plaintiffs' permit simply does minimal work in establishing Plaintiffs' takings claims and is not even relevant to the takings claims based on lack of jurisdiction (where *any* delay caused by the unreasonable assumption of jurisdiction is actionable, regardless of the permitting decision) or extraordinary delay. It is for that reason Plaintiffs' Court of Federal Claims allegations also survive the "act" test discussed in *Tohono*: the Corps' assumption of jurisdiction as well as its delay in issuing a decision were wholly distinct acts from its denial of the permit. *Id.*

The substantial difference in the scope and availability of discovery between the two actions underscores this point—that the two actions require "distinct proofs." *Stockton E. Water Dist.*, 101 Fed. Cl. at 356. The evidence supporting the APA claims filed in the district court was relegated to the administrative record.[12] Indeed, the Corps

---

[12] Indeed, the Corps successfully resisted Plaintiffs' attempts to obtain discovery. *Resource I*, A621 (minute entries filed March 7, 1997)

argued that its decision to deny the permit "must stand or fall based upon the Administrative Record" alone.  A602.  In contrast, the parties to this action have proceeded with lengthy and particularly broad discovery, including production of over 100,000 documents, fifty depositions, and over a dozen expert reports, to resolve the claims at issue.  The widely diverging evidence necessary to prove these claims demonstrates their difference.  *Tohono*, 131 S. Ct. at 1730 (explaining that overlapping facts is the best measure of redundancy because "[d]eveloping a factual record is responsible for much of the cost of litigation")

Indeed, the Government has regularly and routinely conceded this very point.  In response to Plaintiffs' contention at summary judgment that the Ninth Circuit's determination dictates the outcome of the issues here, Defendant eagerly distinguished between the two cases, explaining that "[t]he focus of the Ninth Circuit was *not on the factual nature of the Corps' actions*, but on the legal question of statutory interpretation—an analysis of whether the agency's construction of a

---

(indicating district court granted Defendants' motion to limit review to administrative record).

statute was a reasonable interpretation and within the agency's statutory authority." A181 (emphasis added). Putting a finer point on it—one with which the lower court agreed—Defendant represented that the Ninth Circuit made no evaluation "in any fashion relevant to the court's inquiry" here. *Id.*; *see also* A295, A326–29, A351–52. Having made that determination, the law of the case doctrine should have precluded the Court of Federal Claims from arriving at any other conclusion. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–816 (1988) (explaining that the law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Thus, as all parties and the Court of Federal Claims have agreed (albeit at different points in time), none of the "burdens of redundant litigation" are present here and the Court of Federal Claims could—and should—therefore readily assume jurisdiction. 131 S. Ct. at 1730.

## III. SECTION 1500 HAS NO APPLICATION BECAUSE THE ACTION IN *RESOURCE I* WAS NOT PENDING WHEN PLAINTIFFS FILED THEIR OPERATIVE COMPLAINT IN THE COURT OF FEDERAL CLAIMS

For a cause of action in the Court of Federal Claims to be implicated by § 1500, a suit must have been pending in the district

court at the time the complaint was filed. 28 U.S.C. § 1500. Even if the temporary takings allegations were not part of the original complaint (though they were), then this Court must necessarily conclude the claims articulated in the amended complaint were not pending at any point during the life of the district court action.

Plaintiffs filed their amended complaint in the Court of Federal Claims on October 14, 2005, several years after the district court in *Resource I* entered its final judgment terminating proceedings against the Corps. A94–125. Save for the alternative, extraordinary delay claim in the original complaint, the revised allegations contained in the amended complaint did not become ripe until the Ninth Circuit issued its decision in *Resource I*. *See Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1383 (Fed. Cir. 2012) ("A claim is not ripe for judicial review when it is contingent upon future events that may or may not occur."). In other words, that decision resulted in a previously articulated but unripe cause of action that supplied an independent basis for filing a new suit.

Seemingly acknowledging this point, the Court of Federal Claims, citing this Court's decision in *Central Pines*, concluded that the better

course of action in such circumstances would have been for Plaintiffs to characterize their amended complaint as a supplemental complaint. A36. Ultimately though the Court of Federal Claims concluded that this approach would also have been unavailing because in *Central Pines*, this Court concluded that any such subsequent filings would not supply a basis for invoking the Court of Federal Claims' jurisdiction; instead, it is incumbent upon Plaintiffs to "dismiss[] and refile[] to avoid § 1500." 697 F.3d at 1367. But that option was not available to Plaintiffs here. As the first footnote in their amended complaint indicates, the revised complaint was "filed at the *Court's direction*." A94 (emphasis added). Where plaintiffs are instructed by a court to proceed in a particular fashion, they should not and cannot be faulted for their compliance. Indeed, had Plaintiffs bucked the Court of Federal Claims' instructions and simply dismissed and re-filed rather than amend, the Court could have dismissed the re-filed action under Fed. R. Civ. P. 41(b) (allowing for involuntary dismissal for party's failure to comply with a court order), leaving Plaintiffs with no cause of action at all. The Court of Federal Claims did not dispute any of these contentions. A46.

In any event, even if Plaintiffs' allegations relate back to those in the original complaint as the Court of Federal Claims concluded, this Court should reverse. Under that scenario, the Court of Federal Claims was obliged to "treat the amended complaint as completely superseding the original complaint." *See, e.g.*, *Morris v. United States*, 33 Fed. Cl. 733, 737 n.2 (1995). Consequently, the operative claims and allegations on the date of filing should be deemed those underlying the temporary takings theories, which do not rely on the permit decision.

## CONCLUSION

Nearly a quarter-century ago, Plaintiffs were forced to apply to the Corps for a duplicative Section 404 permit. After the Corps improperly asserted this jurisdiction, it began what turned out to be a drawn-out, six-year process that resulted in the improper denial of their permit, which then caused even further delay. Since 1996, Plaintiffs have waited to receive compensation for this unconstitutional taking. Despite this injustice, Plaintiffs do not ask this Court to reverse the Court of Federal Claims based on equities, they do so because the Court of Federal Claims' determination is fundamentally at odds with the language of § 1500, its purpose, and *Tohono*. For the reasons set forth

above, Plaintiffs ask this Court to find that the Court of Federal Claims

has jurisdiction over this action and reverse and remand for the lower

court to proceed with a trial as expeditiously as possible.

                                                Respectfully submitted,

                                                */s/ Mark S. Parris*

Marc R. Shapiro                       Mark S. Parris
Orrick, Herrington & Sutcliffe LLP    Daniel D. Syrdal
51 West 52nd Street               David Keenan
New York, New York 10019       Orrick, Herrington & Sutcliffe LLP
(212) 506-5000                  701 Fifth Avenue, Suite 5600
mrshapiro@orrick.com           Seattle, Washington 98104
                                      Telephone: (206) 839-4300
                                      Facsimile: (206) 839-4301
                                      mparris@orrick.com

                                      *Counsel for Plaintiffs-Appellants*

# ADDENDUM

**Opinion**
**Dated February 5, 2014 (DKT 239)**

# United States Court of Federal Claims

No. 98-419 L
February 5, 2014

---

**RESOURCE INVESTMENTS, INC.
and LAND RECOVERY, INC.,**

     ***Plaintiffs*,**

**v.**

**THE UNITED STATES OF AMERICA,**

     ***Defendant*.**

Fifth Amendment Takings;
28 U.S.C. § 1500; RCFC
12(b)(1), Subject Matter
Jurisdiction

---

*Daniel D. Syrdal*, Orrick, Herrington & Sutcliffe, LLP, Seattle, WA, for plaintiffs.

*Frank J. Singer*, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, DC, for defendant.

## OPINION *and* ORDER

**Block,** *Judge.*

Before the court is defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") and 28 U.S.C. § 1500. This motion is among a myriad[1] brought by defendant based on *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1731 (2011) , which clarified the limitations of this court's jurisdiction contained in 28 U.S.C. § 1500. Although the Tucker Act confers jurisdiction upon this court to hear certain types of monetary claims against the United States, § 1500 curtails that jurisdictional grant by prohibiting the court from entertaining "any claim for or in respect to which" the plaintiff "has pending in any other court any suit or process against the United States . . . ."

---

[1] For instance, the Court of Federal Claims issued only 8 published § 1500 opinions in 2008, only 5 in 2009, and only 6 in 2010. In contrast, between June and December 2011—*i.e.*, the months following the publication of *Tohono O'Odham* in April 2011—the Court of Federal claims issued 18 published § 1500 opinions. *See also Klamath Irrigation Dist. v. United States*, 1-5910L, 2013 WL 6139925 (Fed. Cl. Nov. 22, 2013), at *1 ("[I]n recent years, [§ 1500] has experienced a *risorgimeneto*, triggered by the Supreme Court's decision in . . . *Tohono O'Odham*").

Although the purpose of § 1500 is to protect the United States against double recovery, this law has created a tremendous burden on plaintiffs because Congress frequently requires certain claims against the United States to be heard in one particular court.[2] Since § 1500 prohibits plaintiffs from contemporaneously suing under different theories of relief that are based on the same or similar operative facts, § 1500 frequently compels plaintiffs with multiple claims "to pursue only one claim and abandon the others." *See* Administrative Conference Recommendation 2012-6, *Reform of 28 U.S.C. Section 1500*, http://www.acus.gov/recommendation/reform-28-usc-section-1500, at 1 (recommending that § 1500 be reformed or repealed altogether). Section 1500 has been described as a "trap for the unwary"[3] that calls to mind the old formal rules of pleading.[4]

The facts of this case date back to the mid-1980s, when Pierce County, Washington, sought to address an acute shortage of landfill space by contracting with plaintiffs to locate and develop a new waste disposal site. Plaintiffs purchased a 320-acre site in 1987 after conducting extensive research, and eventually succeeded in securing a host of permits, including twelve state

---

[2] Congress imposes these jurisdictional limits to safeguard its sovereign immunity and to promote uniformity. *See, e.g.*, Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1079 (Fed. Cir. 2001) (observing that Congress limited jurisdiction over "procurement protest jurisdiction to the Court of Federal Claims" in order to "prevent forum shopping and to promote uniformity in government procurement award law"). *See also* Gregory C. Sisk, *The Jurisdiction of the Court of Federal Claims and Forum Shopping in Money Claims Against the Federal Government*, 88 IND. WASH. L. J. 83 (2013).

[3] Klamath Irrigation Dist. v. United States, 01-591L, 2013 WL 6139925 (Fed. Cl. Nov. 22, 2013), at *1; *Low v. United States*, 90 Fed. Cl. 447, 455 (2009). A prospective plaintiff with multiple claims must be careful to file suit in the correct order. For instance, this court has ruled on several occasions that the plain language of § 1500 does allow plaintiffs to escape its strictures by filing their Court of Federal Claims suit prior to filing their district court suit. *See, e.g.*, Otoe-Missouria Tribe of Indians, Okla. v. United States, 105 Fed. Cl. 136, 139 (2012) ("The plain meaning of pending in court is that there is some action going on in the court. All of the dictionary references refer to something ongoing . . ."). *See also* United Keetoowah Band of Cherokee Indians in Oklahoma v. United States, 104 Fed. Cl. 180, 185 (2012); Nez Perce Tribe v. United States, 101 Fed. Cl. 139, 142 (2011). However, this court is divided on the treatment of same day filings. *See* Passamaquoddy Tribe v. United States, 82 Fed. Cl. 256, 268 (2008) *aff'd*, 426 F. App'x 916 (Fed. Cir. 2011) (holding that "same-day filings in a district court are per se pending for the purposes of § 1500, and the order of filing of the two complaints on the day in question is of no consequence"); *c.f. United Keetowah Band*, 86 Fed. Cl. at 190 (holding that the order of filing *does* apply to same-day filings).

[4] Since prospective plaintiffs may not sue in multiple courts on the basis of the same operative facts, they must first identify "whether the government's conduct is best characterized as a tort, a breach of contract, a taking, a violation of statute, or some combination of these. No single court has jurisdiction over all these kinds of claims against the government, so the plaintiff cannot combine the claims into a single lawsuit." Emily S. Bremer & Jonathan R. Siegel, *Clearing the Path to Justice: The Need to Reform 28 U.S.C. § 1500*, 65 ALA. L. REV. 1, 5 (2013). If the plaintiff errs, the plaintiff must request that the case be transferred and hope that the applicable statute of limitations has not run.

and local permits and four quasi federal-state permits. Pls.' Dist. Ct. Compl. at 1. However, after considering the matter for nearly seven years, the U.S. Army Corps of Engineers denied their application on September 30, 1996. *Id.* at 5. Protracted litigation ensued.

Litigation over plaintiffs' takings claim has been ongoing in this court since May 4, 1998, when plaintiffs filed their original complaint. Four other judges on this court have presided over this case. The parties have spent significant time and resources on this matter, and this court has issued numerous opinions, including opinions concerning the parties' discovery requests and denying the parties' cross-motions for summary judgment. However, in April 2011, the course of this litigation took a sudden turn. "[A]lter[ing] decades of Court of Claims and Federal Circuit jurisprudence,"[5] the Supreme Court clarified the scope of § 1500 by holding that the provision precludes jurisdiction as long as a suit shares "substantially the same operative facts" with the claims in another suit that is pending before another court, *regardless* of whether the suits seek the same relief. *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1731 (2011). The Court held that § 1500 applies even if the various jurisdictional statutes passed by Congress over the years have the cumulative effect of compelling an aggrieved party to seek equitable relief in one court and monetary relief in another court. *Id.* at 1731. In so ruling, the Court directly overturned the opinion of the United States Court of Appeals for the Federal Circuit ("Federal Circuit") that § 1500 does not apply unless "the claim pending in another court" also requests "the same relief." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994).

On June 10, 2011—over thirteen years after plaintiffs filed their original district court complaint—defendant seized upon the Court's ruling in *Tohono O'Odham* by filing, for the first time,[6] a motion to dismiss on the ground that § 1500 deprives this court of subject matter jurisdiction. Defendant alleges that plaintiffs' Court of Federal Claims and district court complaints are based on the same operative facts and that § 1500 accordingly precludes the court from hearing this case, notwithstanding the fact that plaintiffs cannot possibly obtain complete relief in any one court.

For the reasons set forth below, the court agrees that § 1500 applies. Despite the anachronistic nature of the statute and the harsh outcome for plaintiffs, because of § 1500 the court has no choice but to GRANT defendant's motion to dismiss.

---

[5] Daniel P. Graham *et al.*, *Federal Circuit Year-in-Review 2011: Certainty and Uncertainty in Federal Government Contracts Law*, 41 PUB. CONT. L.J. 473, 485 (2012).

[6] Under the rule created by *Loveladies Harbor*, § 1500 clearly did not apply because both of plaintiffs' complaints sought different remedies: the district court complaint asked the court to find that the Corps had no jurisdiction over their case, whereas the complaint before this court sought monetary compensation.

# I. BACKGROUND[7]

Plaintiffs Resource Investments, Inc. and Land Recovery, Inc.[8] are in the lucrative but heavily regulated business of municipal solid waste management. In 1987, plaintiffs purchased a 320-acre site in Pierce County, Washington, for the purpose of constructing a 168-acre solid waste landfill. Pls.' Dist. Ct. Compl. at 1; Def's Mot. Dismiss at 24, ECF No. 234.[9] Plaintiffs applied for the necessary permits in 1990, including one permit they did not actually need from the U.S. Army Corps of Engineers ("Corps") under § 404 ("section 404 permit") of the Clean Water Act ("CWA"), 33 U.S.C. § 1344, to fill approximately 33.3 acres of wetlands on the site. Pls.' Dist. Ct. Compl. at 1; *see Res. Investments, Inc. v. United States*, 85 Fed. Cl. 447, 460–63 (2009) (discussing plaintiffs' dispute with the Corps). In 1993, three years after plaintiffs applied for their section 404 permit, the Corps decided that plaintiffs must consider "long hauling . . . solid waste to out-of-county disposal sites as an 'action' alternative to the [landfill] project, despite the fact that such alternative was not available to [plaintiffs] and was not legally permissible due to binding provisions of the Tacoma-Pierce County Solid Waste Management Plan." Pls.' Dist. Ct. Compl. at 5. After several years of administrative wrangling, the Corps ultimately denied plaintiffs' permit application on September 30, 1996. *Id.*

Undeterred, plaintiffs filed a complaint one month later in the United States District Court for the Western District of Washington seeking to set aside the Corps' decision under the Administrative Procedure Act ("APA"). Def's Mot. Dismiss at 3. Plaintiffs had no choice but to file in federal district court because the Court of Federal Claims ("CFC") lacks the equitable power to grant such injunctive relief. *See* 28 U.S.C. § 1491(a)(2) (limiting the equitable power of the court to granting relief that is "an incident of and collateral to" a judgment for money damages); *Bowen v. Massachusetts*, 48 U.S. 879, 905 (1988) (holding that "[t]he Claims Court does not have the general equitable powers of a district court to grant prospective relief"). The basis for the district court suit was that the Corps' jurisdiction was preempted by the Resource Conservation and Recovery Act of 1976 ("RCRA"), Pub. L. No. 94-580, 90 Stat. 2795 (codified in sections of 42 U.S.C. §§ 6901–81). Pls.' Dist. Ct. Compl. at 103. In the alternative, plaintiffs requested a declaration that the Corps had violated the CWA and the APA by "unlawfully, arbitrarily and capriciously" concluding that the project would create unacceptable environmental effects. *Id.* at 102.

In their jointly-filed district court complaint, plaintiffs alleged that they had carefully selected the 320-acre site for purchase due to its "uniquely desirable geologic and hydrologic

---

[7] The court has extensively discussed this matter's background in an earlier opinion. *Res. Investments, Inc. v. United States*, 85 Fed. Cl. 447, 455–66 (2009). The background set forth here includes only those facts most pertinent to adjudicating this motion.

[8] Plaintiffs in this case are two corporate affiliates in the business of managing municipal solid waste disposal. Since the ownership of both companies is nearly identical, the court hereafter will refer to the two companies collectively as "plaintiffs," for the sake of convenience. *See* Res. Investments, Inc. v. United States, 85 Fed. Cl. 447, 456 (2009).

[9] Page 1 of Plaintiff's District Court Complaint corresponds to Page 24 of Defendant's Motion to Dismiss. It is available on ECF as Document Number 234. Any allegations made in plaintiff's district court complaint are cited as "Pls.' Dist. Ct. Compl." Any allegations mentioned in plaintiff's CFC complaints are cited as "Pls.' CFC Compl." or "Pls.' Am. CFC Compl."

features," which could provide "superior natural protection to any underlying aquifers," and because there were "no other suitable sites in Pierce County." *Id*. at 2-4. The landfill was also subjected to intense public and regulatory scrutiny. *See id*. at 4. Plaintiffs argued that under these facts, "the Corps'[s] decision denying [plaintiffs'] permit application, if allowed to stand, would destroy [plaintiffs'] reasonable business expectancy from the project." *Id*. at 6. On September 16, 1997, the district court ruled in favor of the Corps. Def's Ex. 2 at 19, ECF No. 234-1. Plaintiffs filed a Notice of Appeal to the United States Court of Appeals for the Ninth Circuit on September 25, 1997. *See* Def's Mot. Dismiss at 3.

While its appeal was pending in the Ninth Circuit, plaintiffs filed a complaint in this court on May 4, 1998, seeking monetary relief pursuant to the Takings Clause of the Fifth Amendment. *Id*. Such relief is available only in this court because the Tucker Act grants this court exclusive jurisdiction over suits seeking compensation for takings unless the relief demanded by plaintiff is $10,000 or less. *See* 28 U.S.C. § 1391(a)(1); *c.f.* 28 U.S.C. § 1346(a)(2). The facts alleged in plaintiffs' CFC complaint are strikingly similar to those alleged in its district court complaint. *See* Def's Mot. Dismiss Appx. A at 1–6, ECF No. 234. Both complaints allege that Pierce County's landfill was nearing capacity; both complaints allege that plaintiffs sought to solve Pierce County's garbage disposal needs by developing a new landfill; both complaints allege that plaintiffs invested substantial financial resources in their search for a landfill site; both complaints allege that plaintiffs applied for a number of permits, including the section 404 permit, to operate its proposed landfill within the complex regulatory scheme set up by federal, state, and local laws; both complaints allege that after extensive public hearings, plaintiffs obtained the necessary state and local permits by 1995; both complaints allege that the Corps was slow in processing their section 404 permit application; and both complaints allege that the Corps denied plaintiffs their section 404 permit, thus giving rise to their suit to set aside the Corps' decision under the APA in district court and their suit for monetary relief under the Takings Clause here in the Court of Federal Claims. *See id*.

Three months after plaintiffs filed their CFC complaint, the Ninth Circuit reversed the district court's dismissal of plaintiffs' permit challenge. *Res. Investments, Inc. v. U.S. Army Corps of Engineers*, 151 F.3d 1162, 1168 (9th Cir. 1998) (holding that plaintiffs did not need a section 404 permit because the CWA did not confer jurisdiction over plaintiffs' landfill project to the Corps). Plaintiffs then amended their complaint to reflect the Ninth Circuit's holding that the Corps' assertion of jurisdiction was "erroneous." Pls.' Am. CFC Compl. at 1; *Resource*, 151 F.3d at 1169. Extensive litigation followed. *See generally Resource*, 97 Fed. Cl. 545 (2011) (granting in part plaintiffs' motion to require the Corps to pay an expert witness more than that required by statute); 93 Fed. Cl. 373 (2010) (ruling on discovery motions); 85 Fed. Cl. 447 (2009) (denying cross-motions for summary judgment). As of today, this lawsuit's life spans nearly 17 years.

Like this litigation, section 1500 is far from new. The statute's predecessor was enacted in 1868 "to curb duplicate lawsuits brought by residents of the Confederacy following the Civil War." *Tohono O'Odham*, 131 S. Ct. at 1728. At that time, the common practice was for so-called "cotton claimants" to sue the United States in the Court of Claims under the Abandoned Property Collection Act, ch. 120, 12 Stat. 820 (1863), and simultaneously seek relief against federal officials in other courts based on the same set of facts. *Id*. The only difference between the suits was that one would assert a contract theory in the Court of Claims, while the other would assert a tort theory in district court. And although the statute's roots are quite old,

"Congress reenacted it even as changes in the structure of the courts made suits on the same facts more likely to arise." *Tohono O'Odham*, 131 S. Ct. at 1729.

Under prior precedent, two claims were considered "for or in respect to" each other only if there was some overlap in the relief requested *and* they arose from the same operative facts. *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994) ("For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from *the same operative facts*, and must seek *the same relief*."). But in April 2011, the Supreme Court decided *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, which held that two claims are "for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Id.* at 1731.

With section 1500's application clarified in *Tohono O'Odham*, defendant filed the instant motion to dismiss, arguing (1) that the Corps' denial of a section 404 permit constitutes the critical operative fact connecting plaintiffs' two suits and (2) that the district court action was pending when its CFC suit was filed. Def's Mot. Dismiss at 2.

## II. DISCUSSION

### A. Applicable Legal Standard

Plaintiffs have the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). "In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).

### B. Subject Matter Jurisdiction

The authority of lower federal courts to hear cases is defined by Congress. *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993). *See* U.S. Const. Art. III, § 1, cl. 1. ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish") (granting Congress the power to create—and thus define the jurisdiction of—lower courts). The Tucker Act provides that the Court of Federal Claims "shall have jurisdiction to render any judgment upon any claim against the United States founded . . . upon the Constitution . . . [for] damages . . . not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is itself only a jurisdictional statute; it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). The Tucker Act confers jurisdiction only if a plaintiff can "identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). Claims seeking relief under the Takings Clause of the Fifth Amendment fall under this jurisdictional grant because they are founded upon the Constitution. *See Williams v. United States*, No. 10-880, 2011 WL 3891124, at *2 (Fed. Cl. Sept. 2, 2011) (noting that the Tucker Act's jurisdictional grant includes claims for just compensation under the Fifth Amendment); *see also*

U.S. Const. amend. V, cl. 4 ("[N]or shall private property be taken for public use, without just compensation.").

At first blush, it would appear that jurisdiction over the instant takings case is proper under 28 U.S.C. § 1491.  However, as noted several times above, the jurisdictional grant created by the Tucker Act is limited by 28 U.S.C. § 1500, which provides as follows:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Applying this rule "is more straightforward than its complex wording suggests." *Tohono O'Odham*, 131 S. Ct. at 1727. This "straightforward" application contemplates a two-pronged inquiry: (1) whether the "claim" filed in the CFC was "for or in respect to" a claim (2) "pending against the United States or its agents" in another court when the CFC's jurisdiction was invoked.  "Whether another claim is 'pending' for purposes of section 1500 is determined 'at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action.'" *Low v. United States*, No. 10-811C, 2011 WL 2160880, at *5 (Fed. Cl. June 1, 2011) (quoting *Loveladies Harbor*, 27 F.3d at 1548).  Claims are "for or in respect to the same claim when they are 'based on substantially the same operative facts.'" *Tohono O'Odham*, 131 S. Ct. at 1727 (quoting *Keene Corp.*, 508 U.S. at 212).  *See also Trusted Integration*, 659 F.3d at 1165-70 (applying the statute to two of the three claims at issue, and holding that those two claims arose out of identical conduct as that alleged in a pending district court suit); *Central Pines Land Co. v. United States*, 99 Fed. Cl. 394, 399–401 (2011) (holding that a suit seeking a declaration of mineral rights in district court and a suit brought under the Takings Clause arise from the same operative facts because they arise from the same government conduct), *aff'd*, 697 F.3d 1360 (Fed. Cir. 2012); *Yankton Sioux Tribe*, 84 Fed. Cl. 225, 231–33 (2008) (holding that two suits that allege breaches of duty arising from the same trust relationship and involving the same trust property share the same operative facts).

## C. Plaintiffs' Complaints Share the Same Operative Facts

### 1. An "operative fact" is a fact that is material to proving a claim.

The court must now consider whether the CFC complaint alleges substantially the same operative facts as the suit bought before the federal district court.  Before proceeding further, the court must consider what an "operative fact" is.

The definition of an "operative fact" is an issue of controversy among the parties. According to plaintiffs, operative facts are limited to "those facts that are material in determining the claims at issue."  Pls.' Resp. at 2.  Defendant, in contrast, insists that the sweeping language in *Johns-Manville* stands for the proposition that the court should compare the facts of the two complaints without any reference whatsoever to the legal theories advanced.  Def.'s Reply in Support of Mot. Dismiss at 6-7.  *See Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1564 (Fed. Cir. 1988) ("the term 'claim' in section 1500 'has *no reference* to the legal theory upon which a claimant seeks to enforce his demand.'  Since the legal theory is *not relevant*, neither are

the elements of proof necessary to present a prima facie case under that theory) (emphasis added); *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013) ("the legal theories underlying the asserted claims are *irrelevant* to this inquiry") (emphasis added). In *Johns-Manville*, the Federal Circuit found that § 1500 precluded the Court of Federal Claims from hearing plaintiff's contract claim, despite the fact that the elements of proof for the plaintiff's tort action in district court were different from the elements in the contract theory advanced in the CFC.

However, defendant takes the language of *Johns-Manville* too far. In that case, the Federal Circuit simply held that the word "claim" in § 1500 "has no reference to the legal theory *upon which claimant seeks to enforce his demand*." 855 F.2d at 1564 (emphasis added). Thus, in *Johns-Manville*, the Federal Circuit never went as far as to state that the legal claims advanced by plaintiff are wholly irrelevant in the §1500 context, but simply held that the *type of relief sought* is irrelevant. This view is consistent with the Supreme Court's position that a § 1500 analysis should take into account the principles of res judicata. *See Tohono O'Odham*, 131 at 1730 (emphasizing that the "principles of preclusion law [are] embodied in the statute [§ 1500]"); *Klamath Irrigation Dist. v. United States*, 01-591L, 2013 WL 6139925 (Fed. Cl. Nov. 22, 2013), at *14-17 (stating that the meaning of "operative fact" in the context of § 1500 should be interpreted with reference to the Court's civil procedure and res judicata opinions). Moreover, it is consistent with the Supreme Court's holding that "the form of relief" does not matter "*except insofar as it affects what facts parties must prove*." *Tohono O'Odham*, 131. at 1730 (emphasis added). In fact, the very use of the word "operative" suggests that the relationship between the facts and the legal theory argued by the plaintiff must necessarily be relevant. *See* BLACK'S LAW DICTIONARY 670 (9th ed. 2009) (defining an "operative fact" as "1. A fact that *affects* an existing legal relation, especially *a legal claim*," and "2. A fact that constitutes the transaction or event *on which a claim or defense is based*") (emphasis added).

In sum, two claims arise from substantially the same operative facts if the facts material to supporting a claim in one complaint are also necessary to support a claim in another complaint. In order to make that determination, the court must necessarily take into consideration the nature of the legal arguments made in each complaint.

### 2. *Plaintiffs' district court and CFC complaints share substantially the same operative facts.*

Having considered what an operative fact is, the court must now consider whether plaintiffs' CFC and district court complaints share substantially the same operative facts. As explained above, although the court is barred from taking into account the theories of relief requested by the plaintiffs in the two complaints, the claims articulated by the plaintiff are relevant in determining whether a fact is operative. Hence, "determining whether two claims are 'based on substantially the same operative facts' requires more than a side-by-side comparison of the two complaints to see how much verbiage is in common." *Petro-Hunt*, 105 Fed. Cl. 37, 43 (citing *Trusted Integration*, 659 F.3d at 1165).

#### a. *Trusted Integration* requires a claim-by-claim approach to determining whether plaintiffs' claims arise out of substantially the same operative facts.

*Trusted Integration* is an especially instructive opinion because the Federal Circuit addressed the issue of "operative facts" in detail. Notably, in that case, the facts alleged by the plaintiff in the CFC complaint were nearly the same as those alleged in the district court

complaint. Plaintiff Trusted Integration, a commercial supplier of information security services, had contracted with the Department of Justice ("DOJ") to help DOJ meet the information security standards imposed by the Federal Information Security Management Act ("FISMA") by providing a product known as "TrustedAgent." Apparently, DOJ hoped to use this service to win the designation of "Center of Excellence" ("COE") from the Office of Management and Budget ("OMB"), which would allow DOJ to sell FISMA compliance solutions to other agencies. *Trusted Integration*, 659 F.3d at 1161-62.

Although DOJ represented that it would include Trusted Integration in the submission to the COE Committee, DOJ submitted its own alternative to TrustedAgent, which it developed by accessing and studying—without permission—the TrustedAgent database. *Id.* Trusted Integration sued first in federal district court, asserting "(1) a Lanham Act claim for false designation of origin[,] (2) a common law unfair competition claim[,] and (3) a breach of fiduciary duty claim." *Id.* Trusted Integration then sued in this court, asserting "(1) breach of an oral or implied-in-fact contract[,] (2) breach of the TrustedAgent license agreement[,] and (3) breach of the duty of good faith and fair dealing." *Id.* The government moved to dismiss all of plaintiffs' CFC claims on the ground that § 1500 precluded this court from exercising jurisdiction. The Court of Federal Claims granted the motion, and Trusted Integration timely appealed. *Id.*

In *Trusted Integration*, the Federal Circuit proceeded by identifying which government conduct was material to stating a cause of action for each claim made in the CFC case. *See id.* at 1165-68. The court found that § 1500 precluded plaintiffs from asserting that the DOJ had breached an implied-in-fact contract to engage in a joint venture because the conduct essential to that claim—*i.e.*, the DOJ's failure to promote or offer Trusted Integration's network security solution—was also material to the breach of fiduciary duty claim brought by plaintiff before the federal district court. *Id.* at 1165-66. Similarly, the court found that § 1500 precluded plaintiffs from arguing that the DOJ had breached the duty of good faith and fair dealing because the conduct essential to that claim—*i.e.*, the DOJ's failure to advise Trusted Integration that it was developing a competing product—was also material to the breach of fiduciary duty claim brought before the district court. *Id.* at 1166.

In contrast, the Federal Circuit found that § 1500 did *not* preclude plaintiffs from asserting a breach of license agreement claim before the Court of Federal Claims. Although it acknowledged that the conduct at issue in the breach of license agreement claim—the DOJ's unauthorized *access* of plaintiff's database—was also alleged in the district court case, the Federal Circuit found that it was not material to any claim made by the plaintiff in the district court complaint. *Id.* at 1167-69. Applying the "evidence test" endorsed by the *Tohono O'Odham* Court, which determines that two suits involve the same claim if "the same evidence support[s] and establish[es] both the present and the former cause of action," the Federal Circuit found that evidence relating to the breach of license agreement claim supported but did not establish a cause of action in the district court "because it was insufficient to entitle the plaintiff to relief in the prior suit." *Id.* at 1169; *Tohono O'Odham*, 131 S. Ct. at 1730. Accordingly, the court held that plaintiff's breach of license agreement claim was not based on substantially the same operative facts as any claim brought before the district court, and concluded that § 1500 did not apply. *Trusted Integration*, 659 F.3d at 1170.

b. Plaintiffs' CFC claim and counts III and IV of plaintiffs' district court complaint arise out of the same operative facts.

Following the example set by *Trusted Integration*, the court now turns to an examination of the claims and facts alleged by plaintiffs in the two complaints. To do this, the court must first identify which facts are operative, and then examine whether there is a substantial overlap, "on a claim-by-claim basis." *Klamath Irrigation District*, 01-591L, 2013 WL 6139925, at *19; *Trusted Integration*, 659 F.3d at 1165.

In its original CFC complaint, plaintiffs posited only one claim—that the Corps had taken plaintiffs' land without paying just compensation, as required by the Fifth Amendment of the U.S. Constitution. Pls.' CFC Compl. ¶¶ 47-64. Plaintiffs argued that the Corps' denial of the permit did not advance any legitimate governmental interest and interfered with their investment-backed expectations. *Id*. Clearly, the conduct that is material or operative to that takings claim is the *denial of the permit* by the Corps, for had the Corps granted the permit, plaintiffs would have no takings claim. Therefore, applying *Trusted Integration*, § 1500 does not preclude this court from considering plaintiffs' takings claim unless the facts underlying the Corps' denial of the permit were also material to one of the claims brought by plaintiffs before the district court.

In counts I and II of the district court complaint, plaintiffs contended that the Corps' assertion of jurisdiction under § 404 of the CWA was preempted by the Resource Conservation and Recovery Act and by the Corps' own regulations, respectively. Accordingly, the operative conduct at issue in counts I and II of the district court complaint was the Corps' assertion of jurisdiction under § 404. As plaintiffs point out, the Corps' decision to assert jurisdiction is separate from the Corps' denial of the permit (the operative conduct in the CFC claim), for plaintiffs could have, hypothetically, challenged the Corps' assertion of jurisdiction in federal district court before the Corps had decided whether or not to grant the permit. This court accepted a similar distinction in *McDermott, Inc. v. United States*, 30 Fed. Cl. 332 (1994), one of the cases cited by the plaintiffs. Accordingly, the court finds that the facts operative to asserting counts I and II before the district court were different from the operative facts in the CFC case.

However, the jurisdiction by the Corps was not the only issue in the district court case, even if it was the only issue considered on appeal by the Ninth Circuit. In count III of the district court complaint, plaintiffs alleged that the Corps' *denial of the permit* violated the National Environmental Policy Act (NEPA). Specifically, the plaintiffs argued that the Corps violated NEPA by unlawfully denying a permit on environmental grounds without performing an Environmental Impact Statement. Clearly, the facts underlying the denial of the permit are not mere background facts, but are operative or material to the claim made in count III—but for the denial of the permit, plaintiff could not have alleged a NEPA violation. *See* Pls.' Dist. Ct. Compl. ¶¶ 152-170. Accordingly, the court finds that plaintiffs' CFC claim and count III of the district court complaint arise from substantially the same operative facts, and thus implicate § 1500.

Similarly, in count IV of the district court complaint, the operative facts at issue were the facts underlying the Corps' *decision to deny the section 404 permit*. According to plaintiffs, the denial of the permit violated section 404 of the CWA as well as the Corps' own internal regulations by improperly considering long haul waste disposal as a practicable alternative, by considering Horn Creek as a practicable alternative, by improperly disregarding the certification by the Washington State Department of Ecology under § 401 of the CWA, and by failing to elevate the decision on the permit application to a higher level within the Corps. Pls.' Dist. Ct.

Compl. ¶¶ 219-311. Here too, the facts underlying the Corps' *decision to deny the permit* were material to plaintiffs' claim that the Corps violated applicable regulations because the denial of the permit was the culmination of a series of allegedly improper acts taken by the Corps. *C.f.* Pls.' Opp'n at 12 ("Plaintiffs alleged that the Corps violated [§] 404 and the Corps' own internal regulations when it denied Plaintiffs' permit application"). Therefore, the court finds that plaintiffs' taking claim and count IV of plaintiffs' district court complaint arise from substantially the same operative fact, and thus implicate § 1500.

   3.  *The cases cited by plaintiffs are consistent with the court's finding that § 1500 applies.*

   The case before the court is clearly distinguishable from the precedents cited by plaintiffs because, in those cases, none of the facts that were material to supporting any claim made before the district court were material to supporting the claim made before the CFC. For instance, in *McDermott*, the only issue before the CFC was plaintiff's breach of contract claim. In contrast, the issues before the federal district court were the constitutionality and applicability of 10 U.S.C. § 2405, under which the Navy had sought to limit the ability of shipbuilders to raise contract claims. 30 Fed. Cl. at 334-35. As defendant points out, the plaintiff's district court complaint "required legal determinations that did not implicate the specific contract or conduct at issue" in the action before the Court of Federal Claims. Def's Rep. at 9–10. Unlike *McDermott*, the plaintiffs' district court action challenged not only the jurisdiction of the Corps, but also the conduct of the Corps in denying the permit, which was the operative fact in both the takings claim before the Court of Federal Claims and counts III and IV of the district court complaint.

   Plaintiffs' reliance on *d'Abrera* is similarly misplaced. Pls.' Resp. at 21–22 (citing *d'Abrera*, 78 Fed. Cl. at 58). In *d'Abrera*, the court began by observing that "claims involving the same general factual circumstances, but distinct material facts, can fail to trigger Section 1500." *Id.* at 58 (quoting *Branch v. United States*, 29 Fed. Cl. 606, 609 (1993)). The *d'Abrera* court, like the Federal Circuit in *Trusted Integration*, proceeded to identify which *conduct* by the government was material to the claims made in the CFC and the district court cases. *Id.* The court found that § 1500 did not apply because the conduct material to the plaintiff's copyright infringement claim—namely, the unauthorized reproduction and distribution of the plaintiff's photographs—was distinct from the conduct material to the plaintiff's Lantham Act claim— namely, the government's passing off the photographs as its own. Plaintiffs argue that *d'Abrera* stands for the proposition that "there is no jurisdictional bar when transactionally related claims depend upon different operative facts. This statement is accurate but does not apply to plaintiffs' case. As explained above, the facts underlying the Corps' denial of the section 404 permit were operative in both counts III and IV of the district court complaint and in the takings claim brought before the CFC.

   Plaintiffs' reliance on *Lucas* is also unavailing. As in *Trusted Integration*, it was irrelevant in *Lucas* that the two suits shared similar background facts because the claims in each court arose out of *separate* breaches of two *separate* contracts. *See Lucas*, 25 Cl. Ct. at 305 ("These are two entirely separate contracts with distinct terms and purposes. The materials before the court indicate that . . . the material facts supporting each claim are largely dissimilar."). Again, and in contrast, the denial of the permit by the Corps is the central operative fact in both the CFC and counts III and IV of the district court complaint.

   Lastly, *Whitney Benefits* is wholly inapposite. In that takings case, the CFC had already granted plaintiffs' judgment, the Federal Circuit had already affirmed the judgment of the CFC, and the Supreme Court had already denied cert. *Whitney Benefits, Inc. v. United States*, 31 Fed.

Cl. 116, 117 (1994). In a subsequent dispute over the apportionment of the award of just compensation, the government moved to set aside the judgment as void for lack of subject matter jurisdiction under § 1500. *Id.* The court observed that, although the government had failed to argue the § 1500 issue, both the CFC and the Federal Circuit raised the issue of the CFC's subject matter jurisdiction and found that the CFC had jurisdiction. The court held that regardless of the merits of the government's argument, it was powerless to reopen a case in which there was a final judgment. *Id.* at 119. Although the court did discuss the merits of defendant's § 1500 argument, this discussion was unnecessary to the judgment and thus had no precedential value.

And even to the extent that *Whitney Benefits* applied an operative facts analysis, the case is distinguishable. In that case, the plaintiffs sued in district court to compel the government to accede to a statutory exchange of coal tracts pursuant to the Surface Mining Control and Reclamation Act. That act had deprived plaintiffs' land of value by forbidding strip mining on their land, but mitigated the cost to preexisting owners by allowing them to swap land subject to mining prohibitions for Federal land free of such restraints. *Id.* at 120. The court found that the operative facts in the district court case were "merely the conditions set forth in the statute" that had to be met to qualify for a land swap. *Id.* This set of conditions was not a prerequisite to establishing a takings claim in the suit brought before the CFC. Accordingly, the CFC found that the two suits did not arise from substantially the same operative facts. *Id.* In contrast, the facts underlying the Corps' denial of the section 404 permit were operative in both counts III and IV of the district court complaint and in the takings claim brought before the CFC.

In conclusion, plaintiffs' cited authorities are clearly distinguishable from the case before the court. In contrast to the cases cited by plaintiffs, the operative facts in the case before us— namely, the facts underlying the Corps' decision to deny the permit—were also material in the district court suit.

### D. Plaintiffs' District Court Suit Was "Pending" for Purposes of 28 U.S.C. § 1500

As explained above, 28 U.S.C. § 1500 does not preclude this court from hearing a case merely because the claim asserted in this court arises from the "same operative facts" as the claim asserted in district court. Section 1500 also requires that the suit be "pending" when this court's jurisdiction is invoked. Plaintiffs argue that "there was no suit or proceeding 'pending' that would implicate § 1500" for the following three reasons. First, plaintiffs argue that § 1500 only applies to their amended complaint, which was filed after the litigation in the district court had been resolved. Pls.' Resp. at 4. Second, plaintiffs argue that some of the claims made in the amended complaint (such as their extraordinary delay claim) accrued only after the Ninth Circuit reversed the district court. *Id.* at 11 n.5, 12, 16, 20–21, 34. Such claims, plaintiffs maintain, were not pending in district court for § 1500 purposes because they could not have been asserted prior to the Ninth Circuit's reversal. *Id.* at 11 n.5. Thus, any minimal overlap in these facts is irrelevant because the overlap did not exist until after there was no longer another 'pending' action." Pls.' Resp. at 11 n.5; *id.* at 35. Third, plaintiffs argue that "any conceivable impediment to this Court's jurisdiction has long since been cured. . . . Had Plaintiffs simply voluntarily dismissed and refiled after the Ninth Circuit issued its mandate in *Resource I*, there would not even be a colorable ground for Defendant's motion." Pls.' Resp. at 35.

Plaintiffs first argue that the operative time for determining when their district court suit was pending was when their amended complaint was filed. This position is misguided because

the court's jurisdiction over a case depends on the factual circumstances alleged at the time its jurisdiction was invoked. *Keene*, 508 U.S. at 207 (holding that the jurisdiction of the Court of Federal Claims depends "upon the state of things at the time of the action brought") (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)); *Low v. United States*, 90 Fed. Cl. 447, 451 (2009) (holding that the filing date of an amended complaint is "irrelevant" for purposes of § 1500 because only the filing date of the original complaint is relevant). Additionally, RCFC Rule 15(c)(2) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *See Hall v. United States*, 74 Fed. Cl. 391, 394 (2006). Clearly, the takings claims in both the original and amended complaint are based on the same transaction or occurrence because in both the case before this court and counts III and IV of plaintiffs' district court case, the transaction or occurrence at issue is the Corps' denial of the section 404 permit and the facts underlying that decision. Accordingly, under RCFC Rule 15(c)(2), plaintiffs' amended complaint relates back to the filing date of their original complaint.

A better argument would have been for the plaintiffs to characterize their amended complaint as a supplemental complaint under RCFC Rule 15(d), which provides that the court "may permit supplementation even though the original pleading is defective in stating a claim or defense" if the supplemental pleading "set[s] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *See Walton v. United States*, 80 Fed. Cl. 251, 265 (2008) (stating that, "[b]ecause the Amended Complaint included allegations regarding events that happened after the first complaint, technically it is a supplemental complaint, not an 'amended complaint.'"). However, a supplemental complaint can only cure a jurisdictional defect if a plaintiff fails to meet some statutory prerequisite to filing, such as a statute's exhaustion requirements. *Cent. Pines Land Co.*, 697 F,3d 1360, 1365-66 (Fed. Cir. 2012). Such lenience is not available "if a statute contains an express prohibition against filing suit." *Id*. In *Central Pines*, the Federal Circuit held that § 1500 serves as an "express prohibition" for purposes of RCFC Rule 15(d) rather than a statutory prerequisite to filing that can be cured by supplemental pleading because the statute "explicitly states that the Claims Court 'shall not have jurisdiction' over 'any claim' that a party has pending in another court. This language creates a mandatory prohibited period—the duration of the district court action for the same claim—during which the Claims Court cannot have jurisdiction over any action initiated by plaintiff for the claim." *Id*. at 1366 (citing *Keene*, 508 U.S. at 209). Accordingly, not even RCFC Rule 15(d) allows plaintiffs to escape the strictures of § 1500.

Second, plaintiffs argue that the pending requirement could not possibly be met in the case of the extraordinary delay claim, which was made for the first time in their amended CFC complaint, because that claim could not have existed until after the Ninth Circuit had issued its opinion. Pls.' Resp. at 11 n.5, 12, 16, 20–21, 34. This argument is unavailing because in the post-*Tohono O'Odham* legal universe, the relevant comparisons under § 1500 are not the claims themselves but rather the operative facts that give rise to those claims. *Tohono O'Odham*, 131 S. Ct. at 1731; *see Keene*, 508 U.S. at 210–11 ("After noting that the causes of action 'arose out of' the same factual setting, we applied [the statute] and dismissed the appeal." (citations omitted)); *id.* at 212 ("[T]he word 'claim,' as used in [the statute] has no reference to the legal theory upon which a claimant seeks to enforce his demand."). The Ninth Circuit's reversal in favor of plaintiffs changed the *legal consequences* of the Corps' assertion of jurisdiction, requiring plaintiffs to amend their complaint so as to plead a temporary takings claim rather than a permanent takings claim, and to introduce an extraordinary delay claim. However, the reversal

does not alter the *identity of the operative facts* at issue—namely, the facts underlying the denial of the permit by the Corps.

Lastly, plaintiffs argue that any jurisdictional defect that might have existed at the time of filing has since been cured. Pls.' Resp. at 36 (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 75 F.3d 648, 653 (Fed. Cir. 1996) ("*RF&P*")). Plaintiffs argue that the court should not dismiss their case for lack of jurisdiction at this late stage because they could have, hypothetically, obtained a voluntary dismissal of their original suit before this court and then refiled it at a time when their district court litigation was no longer pending. Pls.' Resp. at 35. The case most supportive of their assertion is *RF&P*. That case, however, is inapposite. Its holding that an amended complaint alleging new theories of recovery can cure a § 1500 defect is no longer relevant after *Tohono O'Odham* because the entire jurisdictional inquiry is now limited to the operative facts asserted, regardless of the form of relief requested. Here, plaintiffs have amended their complaint to take into account the Ninth Circuit's legal conclusions. As discussed above, such an amendment does not change the operative facts of plaintiffs' claims in this court.

## E. The Court May Not Strictly Construe § 1500 or Make a Saving Exception

Finally, plaintiffs make two additional arguments that the court must address. First, plaintiffs describe § 1500 as a "relic of the Reconstruction area" and argue that it should be strictly construed. Pl.'s Opp'n at 3, 5. However, the Supreme Court has expressly rejected this argument. In *Tohono O'Odham*, the Court commands that the statute be given a *broad reading* to prevent it from "be[ing] rendered useless by a narrow concept of identity." 131 S. Ct. at 1728 (quoting *Keene*, 508 U.S. at 213) (emphasis added). Moreover, the role of the court is not to construe a statute narrowly or broadly depending on the circumstances or the judge's policy preferences, but to construe it according to its ordinary meaning. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994).

Second, plaintiffs observe that their right to obtain just compensation for government takings is protected by the Fifth Amendment of the Constitution, and that the doctrine of constitutional avoidance requires the court to interpret § 1500 to avoid depriving them of their constitutional rights. However, the doctrine of constitutional avoidance applies "only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction," and one of those constructions avoids constitutional issues. *Clark v. Martinez*, 543 U.S. 371, 385 (2005). In this case, even if the § 1500 were susceptible to another interpretation that favors the plaintiffs, this court is not at liberty to apply it because the precedent of the Supreme Court and Federal Circuit require this court to apply § 1500 when both suits arise from substantially the same operative facts, as is the case here.

Moreover, there are no serious doubts that Congress, having elected to establish the Court of Federal Claims, may limit its jurisdiction without running afoul of the Constitution. *John R. Sands & Gravel Co. v. United States*, 457 F.3d 1345, 1346-47 (Fed. Cir. 2006) (holding that the Court of Federal Claims lacked jurisdiction of a Takings Clause claim past the six-year limitations period); *see also Block v. North Dakota*, 461 U.S. 273, 292 (1983). Indeed, this court has rejected the contention that § 1500 "cannot be interpreted to restrict the jurisdiction of this court to decide a claim founded on the Constitution, namely a Fifth Amendment inverse condemnation claim." *Donnelly v. United States*, 28 Fed. Cl. 62, 64-65 (1993) (finding no serious constitutional doubt about the applicability of § 1500 to a Takings Clause case).

\* \* \*

Before concluding, it is worth recognizing that this case, like *Central Pines*,[10] "presents exactly the type of incomplete relief and hardship the Supreme Court noted could result from application of section 1500." *Cent. Pines*, 99 Fed. Cl. at 407.[11] Mindful of this hardship, the court must nevertheless stay faithful to its jurisdictional grant, for "there is no basis for finding saving exceptions [to jurisdictional statutes] unless they are made explicit." *De La Rama S.S. Co. v. United States*, 344 U.S. 386, 390 (1953). "If indeed the statute leads to incomplete relief," as it has here, plaintiffs "are free to direct their complaints to Congress." *Tohono O'Odham*, 131 S. Ct. at 1731.[12]

In both *Keene* and *Tohono O'Odham*, the Supreme Court rejected policy arguments based on a litigant's interpretation of § 1500's purpose. In *Keene*, the Court held that:

> We have said nothing until now about Keene's several policy arguments, and now can only answer that Keene addresses the wrong forum. It may well be, as Keene argues, that § 1500 operates in some circumstances to deprive plaintiffs of an opportunity to assert rights that Congress has generally made available to them "under the complex legal and jurisdictional schemes that govern claims against the Government." The trial judge in this case was not the first to call this statute anachronistic, and there is a good argument that, even when first enacted, the statute did not actually perform the preclusion function emphasized by its sponsor. But the "proper theater" for such arguments, as we told another disappointed claimant many years ago, "is the halls of Congress, for that branch of the government has limited the jurisdiction of the Court of Claims." We enjoy no "liberty to add an exception to remove apparent hardship," and therefore enforce the statute.

---

[10] The hardship suffered by the plaintiffs in *Central Pines* was significantly worse than that inflicted upon plaintiffs in the instant case. The court was already "considering the plaintiffs' claim for attorneys' fees and costs [when] the Supreme Court issued its opinion in *Tohono* and the government moved to dismiss." *Central Pines*, 99 Fed. Cl. at 397. The motion to dismiss was filed after plaintiff won a judgment for $1,667,042.86 plus interest under the Takings Clause. *See id.* at 397 (citing *Central Pines*, 95 Fed. Cl. 633, 635 n.1, 652 (plaintiffs awarded a $1.6 million judgment)).

[11] In *Tohono O'Odham*, the Court recognized that its interpretation of § 1500 might force "plaintiffs to choose between partial remedies available [only] in different courts." 131 S. Ct. at 1730.

[12] On December 6, 2012, the Administrative Conference of the United States formally recommended replacing § 1500 with a measure that merely stays proceedings in the Court of Federal Claims until a pending dispute in other federal courts are resolved. *See* Administrative Conference Recommendation 2012-6, *Reform of 28 U.S.C. Section 1500*, http://www.acus.gov/recommendation/reform-28-usc-section-1500. The ABA followed suit with a similar recommendation on February 11, 2013. *See* ABA Resolution 300, http://www.americanbar.org/content/dam/aba/administrative/house_of_delegates/2013_hod_mid year_meeting_daily_journal.authcheckdam.pdf. However, Congress has not yet taken any action on any of these recommendations.

*Keene*, 508 U.S. at 217 (citations and quotations omitted). For that reason, this case, like *Central Pines*, may be appropriate for a congressional reference, "wherein a bill is referred to the chief judge of the Court of Federal Claims by either house of Congress for review by a three judge panel." *Central Pines*, 99 Fed. Cl. at 407; *see* 28 U.S.C. §§ 1492, 2509(a).

The Court of Federal Claims, like any other federal court, may adjudicate claims against the United States *only* with the United States' consent. *Transamerica Ins. Co. v. United States*, 31 Fed. Cl. 602, 604 (1994) ("Absent congressional consent to adjudicate a claim against the United States, [the CFC] lacks authority to grant relief."). When Congress has withdrawn jurisdiction, as it has done here under 28 U.S.C. § 1500, it has also withdrawn the United States' consent to suit. *See Winnebago Tribe of Nebraska v. United States*, 06-913L, 2011 WL 5042385, at * 1 (Fed. Cl. Oct. 25, 2011). The judiciary is said to be the "least dangerous" of the three branches because even in the face of manifest injustice, its duty is to abide by the law—regardless of the harsh effects such obedience might occasion on litigants—and defer the litigants to the political branches for redress. *The Federalist No. 78* (Alexander Hamilton), *available at* http://www.constitution.org/fed/federa78.htm. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

## III. CONCLUSION

For the foregoing reasons, defendant's **MOTION** to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and 28 U.S.C. § 1500 is **GRANTED**. The Clerk is directed to take the necessary steps to dismiss this matter.

**IT IS SO ORDERED.**

s/ *Lawrence J. Block*

Lawrence J. Block
Judge

# Judgment
## Dated February 6, 2014 (DKT 240)

# In the United States Court of Federal Claims

**No. 98-419 L**

RESOURCE INVESTMENTS,
INC. and LAND RECOVERY,
INC.

                                                    **JUDGMENT**

      **v.**

**THE UNITED STATES**

Pursuant to the court's Opinion and Order, filed February 5, 2014, granting defendant's motion to dismiss,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that the complaint is dismissed, for lack of subject matter jurisdiction.

                          Hazel C. Keahey
                          Clerk of Court

**February 6, 2014**        By:     s/ Debra L. Samler

                          Deputy Clerk

<u>NOTE</u>: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of <u>all plaintiffs</u>. Filing fee is $505.00.

**Opinion
Dated April 3, 2014 (DKT 245)**

# United States Court of Federal Claims

No. 98-419 L
April 3, 2014
(UNPUBLISHED)

---

**RESOURCE INVESTMENTS, INC.**
**and LAND RECOVERY, INC.,**

        *Plaintiffs*,

**v.**

**THE UNITED STATES OF AMERICA,**

        *Defendant.*

Fifth Amendment Takings;
28 U.S.C. § 1500; RCFC
12(b)(1), Subject Matter
Jurisdiction

---

    *Daniel D. Syrdal*, Orrick, Herrington & Sutcliffe, LLP, Seattle, WA, for plaintiffs.

    *Frank J. Singer*, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, DC, for defendant.

## OPINION *and* ORDER

**Block,** *Judge.*

    On Feb. 5, 2014, this court issued an opinion granting defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") and 28 U.S.C. § 1500, bringing to conclusion litigation that has been ongoing in the Court of Federal Claims ("CFC") since 1998. *Res. Investments, Inc. v. United States*, 114 Fed. Cl. 639 (2014). In that opinion, the court found that the operative facts in plaintiffs' original Court of Federal Claims complaint—in particular, the decision of the U.S. Corps of Engineers ("Corps") to deny plaintiffs' permit application[1]—were substantially the same as those in Counts III and IV of plaintiffs' district court complaint, which was filed on Oct. 31, 1996. *Id.* at 648-50.

    Plaintiffs' appeal in the district court litigation was still pending when plaintiffs filed the original CFC complaint, on May 4, 1998.[2] Accordingly, the court held that it had no choice but to dismiss the case pursuant to 28 U.S.C. § 1500, which prohibits the court from entertaining

---

[1] The facts of this case are set forth in *Res. Investments, Inc.*, 114 Fed. Cl. at 644-46.

[2] Plaintiffs also filed an amended complaint on Oct. 13, 2005, nearly seven years after the district court litigation had been concluded. Nevertheless, for the purposes of § 1500, the court held that its "jurisdiction over a case depends on the factual circumstances alleged at the time its jurisdiction was [initially] invoked." *Res. Investments, Inc.*, 114 Fed. Cl. at 652-53 (citing *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)).

"any claim for or in respect to which" a plaintiff "has pending in any other court any suit or process against the United States . . . ." *Id*. at 644, *See United States v. Tohono O'Odham Nation*, 131 S.Ct. 1723, 1731 (holding § 1500 is implicated if a claim shares "substantially the same operative facts" with claims in a suit pending before another court, regardless of whether the suits seek the same relief).

Before the court now is plaintiffs' motion for reconsideration pursuant to RCFC Rules 59 and 60, which plaintiffs timely filed on March 3, 2014.

# I. APPLICABLE LEGAL STANDARD

The standard for motions for reconsideration of final judgments is determined by RCFC 59(a) and 60. RCFC Rule 59(a) provides the following:

(1) Grounds for New Trial or Reconsideration. The court may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues--and to any party--as follows:

(A) for any reason for which a new trial has heretofore been granted in an action at law in federal court;

(B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or

(C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

RCFC Rule 60(b), in turn defines "[g]rounds for relief from a final judgment, order, or proceeding." According to this rule, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:"

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

RCFC Rule 60(b).

"The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States,* 904 F.2d 1577, 1583 (Fed. Cir. 1990). Such a motion shall only be granted if the movant makes a showing of "extraordinary circumstances." *Fru–Con Constr. Corp. v. United States,* 44 Fed. Cl. at 300 (citing *Bally Exp. Corp. v. Balicar, Ltd.,* 804 F.2d 398, 400 (7th Cir. 1986). "This showing, under RCFC 59, must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." *Fru–Con Constr. Corp. v. United States,* 44 Fed.Cl. at 300 (internal citations omitted). In the context of a motion for reconsideration, the term "manifest" means "clearly apparent or obvious." *Ammex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002). The court "will not grant a motion for reconsideration if the movant 'merely reasserts . . . arguments previously made . . . all of which were carefully considered by the [c]ourt." *Id.* (quoting *Principal Mut. Life Ins. Co. v. United States*, 29 Fed. Cl. 157, 164 (1993)). Moreover, on a motion for reconsideration, a court cannot entertain "an issue [raised] for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed." *Matthews v. United States*, 73 Fed. Cl. 524, 526 (2006).

## II. DISCUSSION

Plaintiffs first contend that the district court and original CFC complaints were not based on substantially the same operative facts because, plaintiffs argue, the denial of the permit was not material to the resolution of the legal claims at issue, but merely "the impetus" for bringing these claims. According to plaintiffs, to show that defendant violated NEPA and its own regulations (Count III of the district court complaint), plaintiffs merely needed to show "that NEPA and [the Corps'] own regulations required preparation of an [Environmental Impact Statement ("EIS")] because the Corps found that the proposed action contained potentially significant environmental impacts." Pl.'s Mot. Reconsideration ("Pl.'s Mot.) at 10.

The court finds that this argument fails to meet the "extraordinary circumstances" standard discussed above, which allows the court to reconsider its opinion in light of newly discovered evidence, fraud by one of the parties, clerical error, etc., but does not permit the relitigation of issues that have already been addressed by the court. *See, e.g.*, RCFC 60(b).

Moreover, this argument is also wrong on the merits, for in the district court complaint, plaintiffs characterized the denial of the permit as essential to Count III. Plaintiffs stated, "[*i*]*n denying the permit* application without completing an EIS, the Corps violated its own regulations, the CEQ regulations and NEPA. The Corps is not legally permitted to decide in the middle of an EIS process that it feels it has heard enough information about environmental consequences without completing its NEPA process." Pl.'s Dist. Ct. Compl. ¶ 187. [3] In other words, by denying the permit, the Corps interrupted the EIS process, thus violating NEPA and applicable Corps regulations. The denial of the permit is accordingly material—"but for the denial of the permit, plaintiffs could not have alleged a NEPA violation." *Res. Investments, Inc.*, 114 Fed. Cl. at 650.

Plaintiffs also assert that this court erred in finding that the operative facts in the CFC complaint—namely, the Corps' denial of the permit—were substantially the same as those in Count IV of the district court complaint. Plaintiffs now argue that the only material facts for

---

[3] Pl.'s Dist. Ct. Compl. is included as Ex. 1 of Def.'s Mot. Dismiss, ECF No. 234.

Count IV were (1) the reasonableness of the Corps' findings that long hauling, (2) using land at Horn Creek for waste disposal were practical alternatives, (3) disregarding Washington State and local permit certifications, and (4) refusing to elevate the decision on the permit application to a higher level. Pl.'s Mot. at 6.

Nevertheless, as this court found, it would be artificial to separate the Corps' actions leading up to the denial of the permit from the Corps' final decision to deny the permit. *Res. Investments, Inc.*, 114 Fed. Cl. at 650 (holding that "the facts *underlying the Corps' decision to deny the permit* were material to plaintiffs' claim that the Corps violated applicable regulations because the denial of the permit was the culmination of a series of allegedly improper acts taken by the Corps.") (emphasis added). Indeed, the tenor of Count IV of the district court complaint, Pl.'s Dist. Ct. Compl. ¶¶ 318-65, is that the Corps had prematurely decided to deny the permit and was constantly creating impediments to consideration and approval of the permit in the hope that plaintiffs would abandon their effort to obtain the permit. In particular, plaintiffs asserted that the Corps' findings regarding long hauling, the use of Horn Creek, disregarding state and local permit certifications, together with a constant stream of delays prove that "denying [the permit] was . . . unlawful, arbitrary and capricious, and the *preordained result of the Corps' systematic bias, prejudgment and bad faith.*" Pl.'s Dist. Ct. Compl. ¶¶ 318-20 (emphasis added). Moreover, plaintiffs' restrictive approach is also contrary Supreme Court's command that § 1500 be read broadly to prevent it from "be[ing] rendered useless by a narrow concept of identity." *Res. Investments, Inc.*, 114 Fed. Cl. at 653 (quoting *Tohono O'Odham*, 131 S.Ct. at 1728).

Plaintiffs next argue that the court erred in failing to give due regard to the word "substantially." As explained above, the Supreme Court in *Tohono* held that 28 U.S.C. § 1500 deprives this court of jurisdiction over a claim filed before this court if that claim shares "*substantially* the same operative facts" as any other claim pending before another court. 131 S.Ct. at 1731 (emphasis added). "To qualify as 'substantially the same,' the legally operative facts for one cause of action must be operative *and* dispositive to the other." Pl.'s Mot. at 17 (quoting *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1170 (Fed. Cir. 2011)). According to plaintiffs, even assuming that the denial of the permit is an operative fact in Counts III and IV of the district court complaint, "jurisdiction would still lie at the CFC because the operative facts are not substantially similar." *Id.* at 18. In an attempt to show that the denial of the permit is not significant, plaintiffs also offer a graphical representation of the elements required to state a claim for Counts III and IV. *Id.* at 19-20.

The court finds that plaintiffs never raised this issue as an independent argument prior to this motion but simply argued that the "substantially the same operative facts" requirement as a whole is not met unless the facts are virtually identical." Pl.'s Mot. Dismiss at 5-8; *c.f.* Pl.'s Mot. at 13 (providing, for the first time, a dictionary definition of the word "substantial"). Since this is a new argument, the court cannot consider it here. *See Matthews*, 73 Fed. Cl. at 526.

In any event, the court effectively addressed this argument by holding that "two claims arise from substantially the same operative facts if the facts material to supporting a claim in one complaint are also necessary to support a claim in another complaint," and by observing that *Tohono* expressly prohibits the court from strictly construing Section 1500. *Res. Investments, Inc.*, 114 Fed. Cl. at 648. The court also found that the denial of the permit was in fact not only operative but also dispositive—as the court pointed out, but for the denial of the permit, plaintiffs would not have been able to argue these claims. *Id.* at 650.

- 4 -

A45

Finally, plaintiffs argue that the operative complaint in this court for the purpose of § 1500 was plaintiff's second amended complaint, which was filed after litigation before the district court had been finally resolved. As plaintiffs point out, the claims in the amended complaint did not become operative until the Court of Appeals had reversed the district court's opinion and ruled in plaintiffs' favor. Pl.'s Mot. at 24-25. Accordingly, plaintiffs conclude that the district court action was not "pending" for purposes of § 1500, and that § 1500 is inapplicable.

As stated in this court's opinion, the general rule is that amended complaints related back to the filing date of the original complaint. *Res. Investments, Inc.*, 114 Fed. Cl. at 652. However, plaintiffs argue that the amended complaint should be characterized as a supplemental complaint. Pursuant to RCFC Rule 15(d), the court "may permit supplementation even though the original pleading is defective in stating a claim or defense" if the supplemental pleading "set[s] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

Yet again, this argument fails to meet the high threshold for prevailing on a motion for reconsideration. As to the merits of the argument, plaintiffs' argument is in vain because "a supplemental complaint can only cure a jurisdictional defect if a plaintiff fails to meet some statutory prerequisite to filing, such as a statute's exhaustion requirements." *Id*. at 652 (citing *Cent. Pines Land Co. v. United States*, 697 F.3d 1360, 1365–66 (Fed. Cir. 2012)).

In *Central Pines*, the Court of Appeals of the Federal Circuit held that this exception is unavailable "if a statute contains an express prohibition against filing suit," and according to the court, § 1500 contains such an express prohibition. *Cent. Pines*, 697 F.3d at 1366. *See Res. Investments, Inc.*, 114 Fed. Cl. at 652-53. Plaintiffs argue that the precedent in *Central Pines* does not apply because in this case, plaintiffs do not have the option to "dismiss and refile to avoid § 1500." Pl.'s Mot. at 25. However, the Federal Circuit's opinion in *Central Pines* did not rest on plaintiffs' ability to dismiss and refile, but on the nature of § 1500 as an express prohibition against filing suit.

## III. CONCLUSION

For the foregoing reasons, plaintiffs' MOTION for reconsideration is hereby DENIED.

**IT IS SO ORDERED.**

s/ *Lawrence, J. Block*

Lawrence J. Block
Judge

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2014 the foregoing Opening Brief of Plaintiffs-Appellants was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

Dated: August 15, 2014

/s/ Mark S. Parris

Mark S. Parris
Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104
Telephone: (206) 839-4300
Facsimile: (206) 839-4301
mparris@orrick.com

*Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE
UNDER FEDERAL RULES OF APPELLATE PROCEDURE
32(a)(7) AND FEDERAL CIRCUIT RULE 32**

Counsel for Plaintiffs-Appellants certifies that the brief contained herein has a proportionally spaced 14-point typeface, and contains 11,557 words, based on the "Word Count" feature of Word 2010, including footnotes and endnotes. Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Certificate of Interest, Table of Contents, Table of Authorities, Abbreviations, and Statement of Related Cases.

Dated: August 15, 2014

Respectfully submitted,

/s/ Mark S. Parris
Mark S. Parris
Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104
Telephone: (206) 839-4300
Facsimile: (206) 839-4301
mparris@orrick.com

*Counsel for Plaintiffs-Appellants*